**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

(1) MUSCOGEE (CREEK) NATION,
    a federally recognized Indian tribe,

               *Plaintiff*,

v.

(1) CITY OF HENRYETTA, OKLAHOMA,
(2) JOHN INSABELLA, in his official
    capacity as City Attorney for the City of
    Henryetta.

               *Defendants*.

Case No. <u>CIV-25-227-GŁJ</u>

**COMPLAINT**

Plaintiff the Muscogee (Creek) Nation ("Nation"), a federally recognized tribal government, by and through counsel, states as follows:

## INTRODUCTION

1.      In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the United States Supreme Court affirmed that in a series of treaties between the 1830s and the 1860s, Congress established a federally protected reservation for the Nation. *Id*. at 899–902. It further affirmed that Congress has never disestablished the Creek Reservation and that, accordingly, the Reservation today remains Indian country under 18 U.S.C. § 1151(a). *Id*. at 902–13.

2.      Within Indian country (which includes federal Indian reservations), criminal jurisdiction over Indians is shared between the federal government and tribal governments, exclusive of state jurisdiction. "The policy of leaving Indians free from state jurisdiction and control is deeply rooted in this Nation's history." *Id*. at 928 (citation omitted). Accordingly, neither states nor their political subdivisions may exercise criminal jurisdiction over Indians within Indian country absent "a clear expression of the intention of Congress" to authorize such jurisdiction. *Id*. at 929 (citation omitted); *see also, e.g.*, *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) ("[U]nless Congress provides an exception to the rule[,] … states possess 'no authority' to prosecute Indians for offenses in Indian country." (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980))).

3.      In *McGirt*, the Supreme Court confirmed that "Oklahoma cannot come close to satisfying this standard," because Congress has never granted it jurisdiction to prosecute Indians for conduct arising in Indian country. 591 U.S. at 929.

4. That holding applies equally to Oklahoma municipal governments, because the only criminal powers that municipalities possess necessarily derive from Oklahoma's authority. *See*, *e.g.*, *Toch, LLC v. City of Tulsa*, 474 P.3d 859, 866 (Okla. 2020) ("Municipalities *possess and can exercise only those powers expressly or impliedly granted by the state*. A city has no power to enact an ordinance that includes *persons* or principles not clearly within the terms of the delegated powers." (emphases added) (citations omitted)); *Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 75 (2016) (municipalities do not exert criminal jurisdiction independent of state power because "the State is the furthest-back source of prosecutorial power").

5. *McGirt* therefore put the City on clear notice that it lacks criminal jurisdiction over Indians within the exterior boundaries of the Creek Reservation and that prosecuting Indians under color of such jurisdiction absent the assent of Congress violates federal law.

6. Nevertheless, the City has continued prosecuting Nation citizens and other Indians for conduct arising within the Creek Reservation after *McGirt*. It claims, despite controlling precedent to the contrary, that it enjoys criminal jurisdiction over Nation citizens and other Indians within the Creek Reservation.

7. The City's prosecution of Nation citizens and other Indians for conduct occurring within the Creek Reservation constitutes an ongoing violation of federal law and irreparably harms the Nation's sovereignty by subjecting Nation citizens and other Indians within the Creek Reservation to laws and a criminal justice system other than the laws and system maintained by the Nation. Doing so impermissibly interferes with the Nation's federally protected rights of self-government.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1362. The Nation maintains a government-to-government relationship with the United States and

has a governing body duly recognized by the United States Department of the Interior. The

Nation asserts claims arising under the principles of federal Indian law governing federal, tribal,

and state authority within Indian country.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the actions or omissions giving rise to the claims occurred in this District and

a substantial part of the property that is the subject of this action is situated in this District.

## PLAINTIFF

10.     The Nation is a federally recognized Indian tribal government whose governing

body is recognized by the United States Secretary of the Interior. *See* Indian Entities Recognized

by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed.

Reg. 99,899-01, 99,901 (Dec. 11, 2024). The Nation exercises sovereign powers of self-

governance and jurisdiction over the Creek Reservation, which was guaranteed to the Nation and

defined by Congress in the Treaty with the Creeks, 7 Stat. 366 (1832); Treaty with the Creeks, 7

Stat. 417 (1833); Treaty with the Creeks and Seminole, 11 Stat. 699 (1856); and Treaty with the

Creeks, 14 Stat. 785 (1866). *See McGirt*, 591 U.S. at 899–902.

11.     The Nation, through its Attorney General, Lighthorse Police, tribal court system,

and comprehensive criminal code, provides for criminal law enforcement "over all Indians

alleged to have committed in Muscogee (Creek) Nation Indian Country a criminal offense

enumerated and defined by any law or statute of the Muscogee (Creek) Nation insofar as not

prohibited by federal law." MCN Code tit. 27, § 1-102(C).[1] To ensure coordinated law

enforcement and public safety, the Nation has incorporated into its criminal code "any criminal

offense prescribed by" other governments within the Nation's Reservation boundaries, including

the City. NCA 22-048 (codified at MCN Code tit. 14, § 2-114(B)).[2] Likewise, the Nation revised

its traffic code in 2020 to mirror Oklahoma's traffic code (which includes criminal provisions).

NCA 20-087 (codified at MCN Code tit. 14, ch. 3).[3]

**DEFENDANTS**

12.     The City of Henryetta is a municipal government located wholly within the

exterior boundaries of the State of Oklahoma and the Creek Reservation.

13.     John Insabella is the City Attorney for the City of Henryetta and is sued in his

official capacity.

14.     Defendants are hereinafter collectively referred to as "the City" or "Henryetta."

**STANDING**

15.     The City's practice of prosecuting Indians for conduct within the Creek

Reservation is causing irreparable injury to the Nation by interfering with its sovereignty and

undermining the authority of its own criminal justice system, including the authority of its

Attorney General, Lighthorse Police, and courts to address under the Nation's own laws criminal

offenses committed by Indians within its Reservation. *See Ute Indian Tribe*, 790 F.3d at 1005–06

(stating that there is "just no room to debate" that state and county prosecution of an Indian

within a tribe's Indian country absent the assent of Congress is an "infringement on tribal

sovereignty" and causes "irreparable injury" to the tribe); *see also, e.g.*, *Prairie Band of*

---

[1] http://bit.ly/4lJxWOF.
[2] http://bit.ly/3Guta8N.
[3] http://bit.ly/44q5rOQ.

*Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001) (holding that unauthorized assertion of state jurisdiction over Indians within tribe's Indian country is an "infringement on tribal self-government" and that the "[p]rotection of that right is the foundation of federal Indian law; accordingly, … the tribe has standing").

16.    The City's practice of pursuing such prosecutions demonstrates that, absent judicial intervention, it will persist with this unlawful conduct.

17.    This Court can redress the injury that the City is inflicting on the Nation and its right to self-government by issuing a declaratory judgment that the City lacks criminal jurisdiction over Indians within the Creek Reservation absent the assent of Congress, and by enjoining the City from prosecuting Indians except where authorized by Congress going forward.

## THE SUPREME COURT'S DECISION IN *McGIRT v. OKLAHOMA*

18.    In *McGirt*, the United States Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established and defined a federally protected Indian reservation for the Nation. 591 U.S. at 899–902. The Court further affirmed that, since 1866, Congress has never disestablished the Creek Reservation and that it remains Indian country today under 18 U.S.C. § 1151(a). *Id*. at 902–13.

19.    *McGirt*'s holding that the Creek Reservation is Indian country confirms that the settled jurisdictional rules that allocate state, tribal, and federal criminal jurisdiction within Indian country apply within the Creek Reservation. Among those rules is that "within Indian country, generally only the federal government or an Indian tribe may prosecute Indians for criminal offenses," and that "unless Congress provides an exception to the rule[,] … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe*, 790 F.3d at 1003–04 (quotation marks omitted). *McGirt* concluded that "Oklahoma cannot come

close to" showing that Congress has ever authorized it to exercise criminal jurisdiction over Indians within reservation boundaries. 591 U.S. at 929.

20.    Because the City possesses only those powers derived from the State of Oklahoma, it is governed by the rule reiterated in *McGirt* and *Ute Indian Tribe. See Ute Indian Tribe*, 790 F.3d at 1006 (rule against state criminal jurisdiction over Indians in Indian country applies to "a state and its subdivisions").

## THE CITY'S CONTINUED CLAIM TO CRIMINAL JURISDICTION OVER INDIANS FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *McGIRT*

21.    On September 23, 2024, in response to reports that the City was continuing to prosecute Nation citizens and other Indians notwithstanding the *McGirt* decision, the Nation sent a letter to the City Attorney, informing him of the controlling jurisdictional principles in effect within the Nation's Reservation and seeking additional information regarding the City's practices and policies with respect to prosecuting Nation citizens and other Indians. Decl. of Deputy Att'y Gen. Geraldine Wisner ¶ 19 and Exhibit A.

22.    Although the City Attorney did not respond to this letter, the Nation subsequently received information that the City's Chief of Police had instructed his officers not to call the Nation's Lighthorse Police Department for assistance regarding the arrest or ticketing of Nation citizens or other Indians detained or arrested within the City. *Id.* ¶ 20.

23.    In response to this information, the Nation's Attorney General contacted the City Attorney, who confirmed the City's position that it possesses jurisdiction over Nation citizens and other Indians within the Creek Reservation notwithstanding the *McGirt* decision. *Id.* ¶ 21. Although the Nation's Attorney General informed the City Attorney that these prosecutions violated federal law and the Nation's sovereign rights, and offered to assist the City Attorney in

in ensuring that the City's policies conform to law, the City Attorney has declined the Nation's offer. *Id.* ¶¶ 22–23.

24.    The Nation is aware of multiple instances of the City pursuing prosecutions against Nation citizens since the Nation's Attorney General raised the issue with the City Attorney. *See* Decls. of Daniel L. Bear, Darious Tiger, Heather Rodgers, and Brandy Hill. These prosecutions have been undertaken despite clear knowledge on the part of the City that the defendants in question were Creek citizens. *Id.*

25.    In many instances, the City's refusal to recognize and honor the Nation's jurisdiction has resulted in significant hardships for the Nation citizens in question. *See, e.g.*, Rodgers Decl. ¶¶ 5–9.

26.    The City is engaged in law enforcement practices that conflict with the Nation's own considered approach to law enforcement involving Indians within its Reservation and in so doing is further impairing the Nation's federally guaranteed rights of self-government. *See* Wisner Decl. ¶¶ 25-27.

## COUNT 1

27.    The Nation restates, realleges, and incorporates by reference all preceding paragraphs and allegations.

28.    The Creek Reservation is Indian country under 18 U.S.C. § 1151(a).

29.    Within its Reservation, the Creek Nation and the United States possess criminal jurisdiction over Indians exclusive of the State of Oklahoma and its political subdivisions, which are prohibited under federal law from asserting any such jurisdiction absent the assent of Congress. Congress has not authorized such jurisdiction here.

30.    The City continues to assert criminal jurisdiction over Indians for conduct occurring within the Creek Reservation despite the lack of congressional authorization. The City's actions directly contravene federal law and impermissibly infringe on the Nation's right of self-government.

31.    The City has demonstrated its intention to continue asserting criminal jurisdiction over Indians for conduct within the Creek Reservation absent judicial intervention.

**PRAYER FOR RELIEF**

WHEREFORE, the Nation respectfully requests that this Court:

A.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that the City lacks criminal jurisdiction over Indians for conduct occurring within the Creek Reservation and that the City's continued assertion of that jurisdiction violates federal law.

B.    Preliminarily and permanently enjoin the City from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

C.    Award the Nation its reasonable attorney fees and costs.

D.    Award the Nation such other relief as the Court deems just and appropriate.

Dated: July 8, 2025

Geraldine Wisner, OBA No. 20128
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

*/s/Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

Philip H. Tinker, OBA No. 36498
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

**CERTIFICATE OF SERVICE**

I certify that on July 8, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji