# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MUSCOGEE (CREEK) NATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 25-cv-00227-JAR** |
| | ) | |
| **CITY OF HENRYETTA, OKLAHOMA,** | ) | |
| *et al.,* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT
## BY DEFENDANT CITY OF HENRYETTA

---

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

D. Kenyon Williams, Jr. OBA 9643
Keith A. Wilkes, OBA 16750
Bryan J. Nowlin, OBA 21310
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilliams@hallestill.com
kwilkes@hallestill.com
bnowlin@hallestill.com

**ATTORNEYS FOR THE CITY OF HENRYETTA**

**August 14, 2025**

## <u>TABLE OF CONTENTS</u>

MOTION TO DISMISS AND BRIEF IN SUPPORT BY DEFENDANT CITY OF HENRYETTA ..................................................................................................... i

BRIEF IN SUPPORT OF MOTION TO DISMISS ................................................. 1

    I.    Introduction ................................................................................................ 1

    II.    Motion to Dismiss Standard ........................................................................ 2

ARGUMENT AND AUTHORITIES ....................................................................... 3

    PROPOSITION ONE HENRYETTA HAS CONCURRENT JURISDICTION WITH THE NATION TO PROSECUTE MEMBERS FOR NON-MAJOR CRIMES ........................................ 3

    PROPOSITION TWO PLAINTIFF'S REQUESTED RELIEF IS CONTRARY TO LAW ..................... 10

    PROPOSITION THREE THE Castro-Huerta ANALYSIS APPLIES AND ALLOWS HENRYETTA TO ENFORCE ITS LAWS AGAINST NON-MEMBER INDIANS ............................................ 11

    PROPOSITION FOUR PLAINTIFF LACKS STANDING REGARDING NON-MEMBER INDIANS ..... 12

    PROPOSITION FIVE HENRYETTA HAS JURISDICTION UNDER THE CURTIS ACT ................... 17

    CONCLUSION .................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 3

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................... 3

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,*
861 F.3d 1081, 1104 (10th Cir. 2017) .......................................................................... 3

*Carpenter v. Murphy,*
U.S. Supreme Court, No. 17-1107, at 25 .................................................................... 18

*City of Tulsa v. O'Brien,*
2024 OK CR 31 (Okla Crim. App. 2024) ............................................................ *passim*

*Colclazier v. Simpson,*
1924 OK 899, 229 P. 1054 (Okla. 1924) ..................................................................... 16

*Denezpi v. United States,*
596 U.S. 591 (2022) ..................................................................................................... 14

*Doran v. Salem Inn, Inc.,*
422 U.S. 922, 928 (1975) ............................................................................................ 16

*Ellis v. Morzelewski,*
2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022) ....................... 16

*FW/PBS, Inc. v. Dallas,*
493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) .................................... 12

*Herrera v. City of Palmdale,*
918 F.3d 1037, 1046-47 (9th Cir. 2019) ..................................................................... 16

*Hicks v. Miranda,*
422 U.S. 332, 348–49 (1975) ...................................................................................... 16

*Hooper v. City of Tulsa,*
71 F.4th 1270 (10th Cir. 2023) ........................................................................... *passim*

*Inverarity v. Zumwalt*,
1953 OK CR 148, ¶ 18, 262 P.2d 725, 730,................................................................. 13

*Lujan* v. *Defenders of Wildlife*,
504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)...................................... 12, 13

*McClanahan v. Arizona Tax Comm'n*,
411 U.S. 164, 171-72, 93 S. Ct. 1257, 36 L. Ed. 2d 129 (1973)...................................... 6

*McGirt v. Oklahoma*,
591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020).................................... *passim*

*N. Mill St., LLC v. City of Aspen*,
6 F.4th 1216, 1229 (10th Cir. 2021)........................................................................ 13

*Nova Health Sys. v. Gandy*,
416 F.3d 1149, 1158 (10th Cir. 2005) ..................................................................... 14

*Oklahoma v. Castro-Huerta*,
597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022)................................... *passim*

*Raines* v. *Byrd*,
521 U. S. 811, 820, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) ........................... 12, 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)................................. 14

*State v. Davis*,
1913 OK CR 80, ¶ 8, 130 P. 962, 964....................................................................... 16

*Steel Co. v., Citizens for Better Environment*,
523 U. S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)................................. 14

*Stitt v. City of Tulsa*,
2025 OK CR 5, 565 P.3d 857 (Okla. Crim. App. 2025) ............................................ 2

*United States v. Lanza*,
260 U.S. 377, 382 (1922).......................................................................................... 14

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
454 U. S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)..................................... 12

*Warth* v. *Seldin*,
422 U. S. 490, 498-499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)................................. 12

*White Mountain Apache Tribe v. Bracker*,
448 U. S. 136, 142-143, 145, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980)....................................... 6

*Younger v., Harris*,
401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)........................................ 13, 16

**Statutes**

§ 14, 30 Stat. 499 ................................................................................................. 2, 14

18 U.S.C. § 1151 ......................................................................................................... 3

18 U.S.C. § 1152 ..................................................................................................... 4, 5, 6

18 U.S.C. § 1153(a) ...................................................................................................... 3

18 U.S.C. §§ 13 ............................................................................................................ 6

31 Stat. 861 (March 1, 1901)....................................................................................... 15

OKLA. STAT. tit. 11, § 18(A)(3)..................................................................................... 15

OKLA. STAT. tit. 11, § 18b(A)(1)................................................................................... 15

OKLA. STAT. tit. 11, § 27-129....................................................................................... 14

OKLA. STAT. tit. 20, § 40............................................................................................. 14

OKLA. STAT. tit. 74, § 6............................................................................................... 14

**Rules**

FED. R. CIV. P. 12(b)(6)............................................................................... *passim*

LCvR7-1 ..................................................................................................................... 1

**Constitutional Provisions**

OKLA. CONST. art. 6, § 8 .............................................................................................. 15

OKLA. CONST. art. 7, 7 § 7(a)....................................................................................... 15

**Other Authorities**

MERRIAM-WEBSTER DICTIONARY (Online Edition, 2025) ............................................................ 17

Statement of KAVANAUGH, J. 600 U.S. ____(2023)........................................................................ 9

STRICKLAND, RENNARD, THE INDIANS IN OKLAHOMA at p. 76 (1980) ........................................... 4

**MOTION TO DISMISS AND BRIEF IN SUPPORT
BY DEFENDANT CITY OF HENRYETTA**

Defendant City of Henryetta ("Henryetta") moves the Court to enter an order dismissing Plaintiff Muscogee (Creek) Nation's ("Nation") Complaint [Doc. 2] against it for failure to state a claim upon which relief can be granted against the movant. FED. R. CIV. P. 12(b)(6). Pursuant to LCvR7-1, Henryetta provides the following brief in support.

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

**I.      Introduction.**

The Nation challenges the prosecution of its members and non-member Indians[1] in Henryetta municipal court for violations of its city ordinances, and seeks a declaratory judgment prohibiting the same.[2] There are, however, multi-faceted fatal flaws in the Nation's complaint that should result in early dismissal of Henryetta.

The Nation primarily focuses upon the United States Supreme Court decision in *McGirt v. Oklahoma*, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), to support its claim that it alone has jurisdiction over all Member or non-Member Indians within the Creek Nation. While *McGirt* was indeed a landmark decision regarding jurisdiction over Indians in Indian Country under the Major Crimes Act, the Complaint conveniently ignores the application of the jurisdictional analysis the Supreme Court subsequently pronounced in *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022). Applying the proper analysis, Henryetta has concurrent jurisdiction with the Nation to prosecute general crimes committed in Henryetta's city limits within the Nation's Reservation.

---

[1] "Member" refers to enrolled members of the Nation. An Indian who is not a member of the tribe in which the alleged offense occurred is referred to as a "non-Member."
[2] In addition, Plaintiff filed a Motion for Preliminary Injunction to enjoin Henryetta from asserting jurisdiction over Members and non-Members. [Doc. 11].

1

The prosecution of Member and non-Member Indians by Henryetta is consistent with the jurisdictional test and analysis articulated in *Castro-Huerta*, and the decision of the Oklahoma Court of Criminal Appeals regarding non-Members in *City of Tulsa v. O'Brien*, 2024 OK CR 31 (Okla Crim. App. 2024), and *Stitt v. City of Tulsa*, 2025 OK CR 5, 565 P.3d 857 (Okla. Crim. App. 2025) (following *O'Brien* and *Castro-Huerta* in holding that the state and its municipalities have concurrent jurisdiction with the Creek Nation over alleged general crimes committed by non-Member Indians.).[3]

The Nation also seeks a declaratory judgment that misstates the controlling law of the land. Applying the law that exists, rather than the law as the Nation would like it to be, is a fatal flaw. The Nation has failed to state a claim upon which the relief it requests can be granted. The Nation is unable to establish either an injury-in-fact or redressability to have standing to bring this action against Henryetta or any defendant.

In addition, Henryetta requests the Court to consider and apply Section 14 of The Curtis Act. 30 Stat. 495, 499 § 14 (June 28, 1898). Section 14 subjected both non-Indians and Indians to municipal jurisdiction in the former Indian Territory, which today includes the Creek Reservation. Although a panel of the circuit court held that Section 14 no longer applied to the City of Tulsa in *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023), Henryetta respectfully proposes that it does apply to Henryetta and should be honored.

**II.    Motion to Dismiss Standard**.

The Federal Rules of Civil Procedure permit a court to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). "To survive a motion to

---

[3] On July 7, 2025, Mr. Stitt filed a Petition for Writ of Certiorari with the United States Supreme Court, Case No. 25-30, challenging the Oklahoma Court of Criminal Appeals holding. The Petition is pending.

dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The court should accept as true all factual allegations and views them in the light most favorable to the non-movant, but this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND AUTHORITIES

### PROPOSITION ONE
### HENRYETTA HAS CONCURRENT JURISDICTION WITH THE NATION TO PROSECUTE MEMBERS FOR NON-MAJOR CRIMES

Navigating the unsettled post-*McGirt* legal landscape continues to present challenges to state, tribal, and federal governments, as well as to law enforcement and residents within the affected jurisdictions. The status today, however, is settled with respect to the jurisdictional test and analysis articulated by the United States Supreme Court in *Castro-Huerta*. Although the Nation is greatly displeased with *Castro-Huerta*, it is the law of the land until further clarification or abrogation. When applied here, the Nation's Complaint should be dismissed.

Five years ago, the United States Supreme Court held that Congress never disestablished the Nation's Reservation; that the land within the Nation's Reservation is "Indian country," as defined in 18 U.S.C. § 1151; and that the federal government therefore has exclusive jurisdiction to prosecute Indians for certain crimes committed within the Nation under the Major Crimes Act, 18 U.S.C. § 1153(a). *McGirt*, 591 U.S. at 913-934.

The Nation refers to *McGirt* as generally "affirming" a general rule prohibiting state criminal jurisdiction in the Nation's reservation. And while this is indeed the current general rule, McGirt is in reality as disestablishment case because Oklahoma and the governments within it, including the government of the United States, had largely ignored the Nation's jurisdiction and right of self-government following statehood. Following statehood Oklahoma immediately began acting as if it had jurisdiction over all Indian lands. *See, e.g.*, *Ex parte Nowabbi*, 1936 OK CR 123, 61 P.2d 1139; *Toosigah v. United States*, 186 F.2d 93 (10th Cir. 1950). For example, in a 1953 letter from then Governor of Oklahoma, Johnston Murray, replying to a suggestion by the Assistant Secretary of the Interior that the Governor meet with the Indian tribes in Oklahoma regarding the State assuming civil and criminal jurisdiction over Indian country (as was being legislated for other states in Public Law 280), Governor Murray replied:

> When Oklahoma became a State, all tribal governments within its boundaries became merged in the State and the tribal codes under which the tribes were governed prior to Statehood were abandoned and all Indian tribes, with respect to criminal offenses and civil causes, came under State jurisdiction. Therefore, Public Law No. 280 (providing a procedure for the assumption of jurisdiction by the States) will not in any way affect the Indian citizens of this State.

STRICKLAND, RENNARD, THE INDIANS IN OKLAHOMA at p. 76 (1980*).*

Oklahoma did not sign-on to PL-280 which greatly reduced tribal jurisdiction. However, Oklahoma's response to the Assistant Secretary's offer of jurisdiction was that no further action was necessary because Oklahoma believed (wrongfully) that tribal governments had been permanently extinguished. A number of Court cases altered this state of affairs, but none more so than *McGirt*, which greatly expanded the shear amount of land in Oklahoma that could be considered Indian country due to the lack of any clear act of Congress to disestablish the Nation's reservation.

Post-*McGirt*, numerous jurisdictional challenges and questions have arisen in Indian country, leading litigants to turn to the courts for answers. A key jurisdictional question was posed to the United States Supreme Court in *Castro-Huerta*, in which the court was asked to determine whether the federal government has *exclusive* jurisdiction to prosecute crimes by non-Indians committed against Indians in Indian country, or whether federal and state governments have *concurrent* jurisdiction to prosecute those crimes. *Id*. at 632-633. While factually distinct, the *Castro-Huerta* court firmly established the foundational principle for conducting jurisdictional analysis in Indian country: "**the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country**. *Id*. at 637 (emphasis added). Regarding preemption, *Castro-Huerta* explained that "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id.* at 638.

Henryetta's municipal ordinances are general crimes for purposes of federal Indian law. 18 U.S.C. § 1152.  Section 1152 states:

> Except as otherwise provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

*Id*. The General Crimes Act "borrows the body of federal criminal law that applies in federal enclaves and extends it to Indian country." *Castro-Huerta*, 597 U.S. at 640. However, nothing in the plain language of the General Crimes Act preempts the State's authority to prosecute crimes in

5

Indian country. *Id*. at 639-40 and n.2. As the *Castro-Huerta* Court held, "the General Crimes Act does not treat Indian country as the equivalent of a federal enclave for jurisdictional purposes. Nor does the Act make federal jurisdiction exclusive or preempt state law in Indian country." *Id*. at 642. Thus, "[u]nder the General Crimes Act . . . both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id.* at 639 (footnote omitted).

To be fair, *Castro-Huerta* was not deciding the specific jurisdictional question at-issue here. However, the analytical framework for deciding a jurisdictional challenge in Indian country is not distinguishable. Indeed, the *Castro-Huerta* jurisdictional analysis is unlimited and was relied upon by the Oklahoma Court of Criminal Appeals in *O'Brien* and *Stitt*. In *Castro-Huerta*, the Court observed that:

> [t]o the extent that a State lacks prosecutorial authority over crimes committed by Indians in Indian country (a question not before us), that would not be a result of the General Crimes Act. Instead, it would be the result of a separate principle of federal law that . . . precludes state interference with tribal self-government.

597 U.S. at 639 n.2 (citing *White Mountain Apache Tribe v. Bracker*, 448 U. S. 136, 142-143, 145, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980) and *McClanahan v. Arizona Tax Comm'n*, 411 U.S. 164, 171-72, 93 S. Ct. 1257, 36 L. Ed. 2d 129 (1973)). While it is anticipated Plaintiff will offer the same failed arguments urged in *Castro-Huerta*, a binding separate principle does not exist.

Absent preemption by federal law under ordinary principles of federal preemption, the next—and last—step of the established *Castro-Huerta* analysis is to determine whether the exercise of state jurisdiction would unlawfully infringe on tribal self-government. 597 U.S. at 638. Under U.S. Supreme Court precedent, this requires a balancing of the federal, state and tribal interests. *Bracker*, 448 U.S. at 145. Here, principles of tribal self-government should not bar

Henryetta from prosecuting misdemeanor traffic crimes or ordinance violations committed by Nation Members on the Reservation when those offenses occur in Henryetta.

The exercise of state (and municipal) jurisdiction under these circumstances would not infringe on tribal self-government. Henryetta's prosecution of Nation Members for misdemeanor traffic offenses and ordinance violations occurring in Henryetta does not affect the Nation's authority to regulate its own citizens for violations of Creek tribal law. Further, Henryetta's jurisdiction is *concurrent* with the Nation and does not displace, or diminish, the Nation's own prosecutorial authority to try Indians for violations of local tribal law. In fact, Henryetta's prosecution of violations of its ordinances bolsters the Nation's strong interest in public safety for its citizens in this part of the Creek Reservation. As the Oklahoma Court of Criminal Appeals observed in *O'Brien*, to the extent Henryetta's exercise of concurrent jurisdiction over Indians for misdemeanor traffic offenses committed on the Creek Reservation would somehow poses a problem, Congress can seek to alter it. *O'Brien*, 2024 OK CR at ¶ 32.

Next, Henryetta's prosecution of Nation Members for misdemeanor offenses also fails to harm the federal interest in protecting Indians on the Creek Reservation. Federal jurisdiction over such crimes would be concurrent to the city's jurisdiction and thus not affected. *See* 18 U.S.C. §§ 13, 1152. The federal interest is enhanced by Henryetta exercising its concurrent jurisdiction to help ensure public safety on the Reservation for all citizens. This is especially so considering Henryetta already has primary responsibility for law enforcement within its own city limits and the limited role of the federal government in prosecuting misdemeanor traffic offenses, code violations, and other general non-major crimes.

Like Henryetta and the Nation, the State of Oklahoma has a strong sovereign interest in ensuring public safety on the roads and highways of its territory and in ensuring criminal justice

for all citizens, both Indian and non-Indian. *See Castro-Huerta*, 597 U.S. at 651 (recognizing that "the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims."). As a municipal subdivision of the State, Henryetta already has primary responsibility for enforcement of the laws within its city limits, particularly misdemeanor traffic offenses and municipal code violations. Henryetta's prosecution of Members and non-Members for these crimes on the reservation, as part of its concurrent jurisdiction, enhances the interests of both the State, city, and Nation in protecting the motoring public, potentially reducing motor vehicle accidents and deaths across its territory, regardless of tribal identity.

In sum, the balance of interests under *Bracker* does not preempt the exercise of state (and thus municipal) jurisdiction in Henryetta. The City's exercise of concurrent jurisdiction does not unlawfully infringe upon the Nation's right to self-government. The Nation is free to enforce its laws against the same persons for the same offenses, provided its laws complement the municipal code. Indeed, as the Complaint alleges, "the Nation revised its traffic code in 2020 to mirror Oklahoma's traffic code." Complaint [Doc. 2 at 5, ¶ 11]. Henryetta welcomes this partnership with the Nation to concurrently protect and enhance the public safety of all Members, non-Members, and non-Indians within Henryetta's city limits and the Nation's Reservation.

Of further import, the Court should also consider the Statement of Justice Kavanaugh—the majority opinion author of *Castro-Huerta*, as it relates to a Tenth Circuit panel opinion in *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023). In *Hooper*, the Tenth Circuit held that Section 14 of The Curtis Act ("Curtis Act") no longer applied to City of Tulsa, precluding Tulsa from enforcing its traffic laws against Indians.[4] After the decision was issued, the City of Tulsa

---

[4] *See* Proposition Five, below.

initially applied for and obtained a temporary stay from the United States Supreme Court, and an extension of that stay. The stay was subsequently lifted, however, because the case was in an interlocutory posture. With the lift of the stay, Justice Kavanaugh—the author of *Castro-Huerta*— issued an optional Statement regarding the matter:

> The City of Tulsa's application for a stay raises an important question: whether the City may enforce its municipal laws against American Indians in Tulsa. For example, may Indians in Tulsa violate the City's traffic safety laws without enforcement by the City? . . . .
>
> Importantly, the Court of Appeals declined for now to reach an additional argument raised by the State of Oklahoma as *amicus curiae*; that the City may exercise jurisdiction under the reasoning in [*Castro-Huerta*]. On remand in the District Curt, the City may presumably raise that argument.

*See* Statement of KAVANAUGH, J. 600 U.S. ____(2023).[5] On remand to the Northern District of Oklahoma, the City of Tulsa did just that, requesting the district court to retain jurisdiction to address the implications of the U.S. Supreme Court's decision in *Castro-Huerta*, as referenced by Justice Kavanaugh above. Instead of addressing the issue, the district court dismissed the case, writing, "[t]he Tenth Circuit chose not to address *Castro-Huerta* in its decision and this Court similarly declines to address it." *Hooper v. City of Tulsa*, No. 21-CV-00165-WPJ-JFJ, Doc. 52 (N.D. Okla. Dec. 23, 2023).

Given the teachings of *Castro-Huerta*, and the emphasis placed on the legal issue and the import of that decision by its majority author in the above *sua sponte* Statement, Plaintiff's has failed to state a claim under which relief can be granted against Henryetta.

---

[5] https://www.supremecourt.gov/opinions/22pdf/23a73_gfbi.pdf.

## PROPOSITION TWO
### PLAINTIFF'S REQUESTED RELIEF IS CONTRARY TO LAW

The declaratory relief sought by the Nation not only misstates the law it provides an interpretation that was explicitly rejected by the United States Supreme Court in *Castro-Huerta*.

Indeed, Plaintiff's Complaint alleges it is entitled to the following declaration from the Court:

> This Court can redress the injury that the City is inflicting on the Nation and its right to self-government by **issuing a declaratory judgment that the City lacks criminal jurisdiction over Indians within the Creek Reservation absent the assent of Congress, and by enjoining the City from prosecuting Indians except where authorized by Congress going forward**.

Complaint (emphasis added). [Doc. 2 at 6, ¶ 17]. Plaintiff knows better. The above quote presents the *losing* argument in *Castro-Huerta* and should not have been represented here as the existing state of the law. Indeed, the *Castro-Huerta* majority could not have been clearer in distinguishing the law from the contrary position taken by Justice Gorsuch in his <u>dissent</u> that the Nation attempts to forward here:

> [T]he dissent contends that Congress must affirmatively authorize States to exercise jurisdiction in Indian country, even jurisdiction to prosecute crimes committed by non-Indians. But under the Constitution and this Court's precedents, the default is that States may exercise criminal jurisdiction within their territory. *See* Amdt. 10. States do not need a permission slip from Congress to exercise their sovereign authority. In other words, the default is that States have criminal jurisdiction in Indian country unless that jurisdiction is *preempted*. In the dissent's view, by contrast, the default is that States do *not* have criminal jurisdiction in Indian country unless Congress specifically *provides* it. The dissent's view is inconsistent with the Constitution's structure, the States' inherent sovereignty, and the Court's precedents.

597 U.S. at 652-653. The Nation is not entitled to the declaration it seeks under existing law. The *Castro-Huerta* Court's articulation of the default rule concerning state jurisdiction in Indian country is not limited by tribal membership status. As a matter of state sovereignty, state jurisdiction is the default under the Constitution, irrespective of an individual's Indian membership

status. It is axiomatic that this Court apply the law as most recently interpreted and articulated by the U.S. Supreme Court, and not as Plaintiff or Justice Gorsuch's impassioned dissent wishes it to be. The Nation has failed to state a claim upon which relief can be granted against Defendants. FED. R. CIV. P. 12(b)(6).[6] Dismissal is proper.

**PROPOSITION THREE**
**THE *Castro-Huerta* ANALYSIS APPLIES AND ALLOWS HENRYETTA**
**TO ENFORCE ITS LAWS AGAINST NON-MEMBER INDIANS**

Applying the United States Supreme Court's jurisdictional test from *Castro-Huerta*, Henryetta has concurrent jurisdiction with the Nation to prosecute misdemeanor traffic violations and violations of its municipal code against non-Member Indians. Indeed, the Oklahoma Court of Criminal Appeals applied the *Castro-Huerta* jurisdictional test to determine that the City of Tulsa has concurrent jurisdiction with the Nation to prosecute non-Member Indians for the alleged violations of misdemeanor traffic laws and municipal ordinances within the Nation's Reservation. *O'Brien*, 2924 OK CR 31.

In addition to the analysis provided above in Proposition One, as applied to non-Member Indians, the *O'Brien* Court also noted that concurrent jurisdiction over non-Members does not displace, or diminish, the Nation's prosecutorial authority to try Indians for violations of local tribal law. Rather, the prosecution of non-Member Indians by the municipality would only bolster the Nation's strong interest in public safety for its citizens in this part of the Creek Reservation. *Id*. at ¶ 32. And, of course, the prosecution of non-Member Indians does not infringe upon or "implicate the *self* in tribal self-government" because the prosecution of non-Member Indians does not affect the Nation's authority to regulate its own citizens. *See O'Brien*, concurring

---

[6] Relying upon a non-existent exhibit to the Complaint, the Nation ironically claims Henryetta ignores *McGirt*. It does not. To the contrary, it is the Nation which ignores the current status of Indian jurisdictional law established in *Castro-Huerta*.

opinion at ¶¶ 13-14. Based upon *Castro-Huerta* and the analysis in Proposition One and *O'Brien*, Plaintiff is not entitled to the relief requested regarding the prosecution of non-Member Indians for general crimes.

**PROPOSITION FOUR**
**PLAINTIFF LACKS STANDING REGARDING NON-MEMBER INDIANS**

Plaintiff lacks proper standing to proceed. The doctrine of standing developed in case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. *Raines* v. *Byrd*, 521 U. S. 811, 820, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for legal wrongs. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982); *Warth* v. *Seldin*, 422 U. S. 490, 498-499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). The United States Supreme Court has established the "irreducible constitutional minimum" of standing requires that a plaintiff: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). Here, Plaintiff cannot establish either an injury-in-fact or redressability.

**A. Plaintiff Has Not Suffered An Injury in Fact**.

Injury in fact is the "[f]irst and foremost" of standing's three elements. *Steel Co. v., Citizens for Better Environment*, 523 U. S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Injury in fact is a constitutional requirement and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise

12

have standing." *Raines*, 521 U.S. at 820, n.3. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U. S., at 560 (internal quotation marks omitted). To be concrete, an injury must be real harm to a legally protected interest, not abstract. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is particularized only if it affects a party in a personal and individual way. *Id*. And a party who is not threatened by – and, indeed, could never be subject to – state criminal prosecution lacks standing and is not an appropriate plaintiff to challenge any such pending prosecutions.

> A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Younger v., Harris*, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

Indeed, the Nation is not adversely impacted—let alone suffered an injury in fact—as a result of Henryetta following established law to prosecute non-Member Indians:

> . . . [the] prosecution of non-member Indians of the Muscogee (Creek) tribe for misdemeanor traffic offenses occurring on public streets and roads in Tulsa does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe. Further, **the city of Tulsa's jurisdiction would be concurrent only and would not displace, or diminish, the tribe's prosecutorial authority to try Indians for violations of local tribal law**. **Tulsa's prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation**. To the extent that Tulsa's exercise of concurrent jurisdiction over non-Creek Indians for misdemeanor traffic offenses committed on the Creek reservation would somehow pose a problem, Congress can seek to alter it.

*O'Brien*, 24 OK CR 31, ¶ 32 (emphasis added). Indeed, nothing in *Castro-Huerta* or *O'Brien* diminishes Plaintiff's jurisdiction to police and prosecute crimes—other than Major Crimes—within the Nation.

13

Furthermore, general crime prosecutions against non-Member defendants are against those individuals and *not* the Nation. Only the individuals can claim specific injury. Those individuals can challenge jurisdiction in the municipal court, and can then appeal any adverse ruling or verdict there to the state district court in Okmulgee County. OKLA. STAT. tit. 11, § 27-129. If the state district court ruling is adverse to the non-Member Indian, he or she can then appeal to the Oklahoma Court of Criminal Appeals and, ultimately, the United State Supreme Court. As in *McGirt* and *Castro-Huerta*, the Nation may participate as amicus curiae, as it and many others whose injuries are abstract and not specific have done so in the past.

Henryetta's prosecutions—the likes of which have existed for over a century— do not impact the Nation's authority to prosecute the same defendants. The United States Supreme Court recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022); *see also United States v. Lanza*, 260 U.S. 377, 382 (1922) (holding that "[e]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."). Without an injury in fact, the Nation's Complaint regarding the municipal prosecution of misdemeanor general crimes against non-Member Indians should be dismissed for a lack of standing and, thus, a failure to state a claim upon which relief can be granted in this regard against Henryetta.

**B.  Plaintiff Cannot Demonstrate Redressability**.

Redressability is an "'irreducible'" component of standing, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), which requires "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Here, this component is fatally absent.

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. v. Gandy*, 416 F.3d

1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when, as here, the Court's decision would have no meaningful effect on a complainant's alleged injury. Even if the Nation claims that Henryetta's prosecutions of non-Member Indians caused actual injury to the Nation, redress would not be available here. The most extreme—albeit inappropriate—relief would be to enjoin Henryetta from prosecuting certain crimes against a limited class of individuals. Even then, redress could not be achieved.

The Governor of Oklahoma has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" OKLA. CONST. art. 6, § 8. A corresponding statute authorizes the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" OKLA. STAT. tit. 74, § 6. In addition, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. *Id*. at § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Oklahoma Court of Criminal Appeals in which the State is interested as a party. *Id*. at § 18b(A)(1). Given the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue prosecutions of general crimes committed in Henryetta in Okmulgee County District Court.

And, finally, the Nation's requested injunction could not affect the state district courts or the Oklahoma Court of Criminal Appeals' ability to proceed with adjudications. Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" OKLA. CONST. art. 7, § 7(a). And the Oklahoma Court of Criminal Appeals "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the district . . . courts[.]" OKLA. STAT. tit. 20, § 40. The Oklahoma Court of Criminal Appeals "is supreme in all criminal appeals from state

courts of this State," *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730, and is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964. In sum, a favorable decision for Plaintiff against Henryetta will not redress any purported injury. Dismissal for a lack of standing is proper.

      **C.** ***Younger* Abstention Applies to Future Prosecutions**.

Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. Although *Younger* abstention may only be mandatory where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that *Younger* abstention could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings"). By example,

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases). As argued above, the Nation lacks standing to assert claims regarding future prosecutions not yet initiated.

**PROPOSITION FIVE**
**HENRYETTA HAS JURISDICTION UNDER THE CURTIS ACT**

A panel of the Tenth Circuit Court of Appeals held that Section 14 of The Curtis Act was no longer applicable to the City of Tulsa, in *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023). That conclusion, however, was reached in part on facts that do not apply to Henryetta, and in the misinterpretation of law, as found in *Castro-Huerta*.

Section 14 of The Curtis Act of 1898 ("Curtis Act") provides municipalities with authority over "*all* inhabitants of such cities and towns, *without regard to race*," and provides that individuals, including tribal members, "*shall be subject to all laws and ordinances of such city or town governments* [ ]." Curtis Act, § 14, 30 Stat. 499, 500 (emphasis added).

With the 1887 passage of the Dawes Act, Congress worked to promote "a capitalist and proprietary relationship with property" among Native American tribes. The Five Civilized Tribes (Muscogee (Creek), Cherokee, Choctaw, Chickasaw and Seminole Nations) (the "Five Tribes") were exempt from the Dawes Act, due to the fee ownership of their land, until 1898. After efforts to negotiate allotment with the Five Tribes failed, Congress passed the Curtis Act. The Curtis Act extended the provisions of the Dawes Act to the Five Tribes, and mandated the abolition of "all tribal courts in Indian Country[.]" Curtis Act, § 28, 30 Stat. 504-505. Section14 of the Curtis Act empowered the inhabitants of any city or town in Indian Territory to incorporate, and provided that "the city or town government ... shall possess all the powers and exercise all the rights of similar municipalities in said State of Arkansas." *Id*. at § 14, 30 Stat. 499. Specifically, Section 14 provided for the incorporation of municipalities within Indian Territory consistent with the laws of Arkansas.

After enacting the Curtis Act, Congress entered into the Creek Allotment Act agreement with the Nation in 1901. 31 Stat. 861 (March 1, 1901). The Creek agreement expressly stated that

17

"no Act of Congress or treaty provision inconsistent with this agreement shall be in force in said nation, except section fourteen of [the Curtis Act], which shall continue in force as if this agreement had not been made." *Id*. at 872, ¶ 41. The agreement then contemplates that the "tribal government of the Creek Nation shall not continue longer than" March 4, 1906. *Id.* at ¶ 46. Thus, the Curtis Act and the agreements were regarded as part of the process toward abolishing reservations in 1906 in the run-up to statehood. *Id. See also Carpenter v. Murphy*, U.S. Supreme Court, No. 17-1107, at 25 ("the ratified agreement ... expressly preserved only §§ 14 and 27 of the Curtis Act") (emphasis added). But, as we know now, that never happened.

A few short years after the Creek Allotment Act, Congress passed the Oklahoma Enabling Act in advance of Oklahoma becoming a state. In the Enabling Act, references to Arkansas law were replaced by references instead to the law of the new State of Oklahoma. Since Oklahoma statehood, there has been no amendment to § 14 of the Curtis Act or the Creek Allotment Act, the latter of which expressly preserved § 14 of the Curtis Act. This explicitly preserved section of the Curtis Act specifically allows cities and towns like Henryetta to adopt and enforce municipal ordinances. As Justice Gorsuch wrote in *McGirt*, "w]hen interpreting Congress's work in this arena, no less than any other, our charge is usually to ascertain and follow the original meaning of the law before us." *McGirt*, 591 U.S. at 913. The Curtis Act is that "clear expression of the intention of Congress." *Id*. at 1011. *McGirt* did not nullify Section 14 of the Curtis Act.

In *Hooper*, the circuit court panel's primary argument against City of Tulsa's reliance upon the Curtis Act was the fact that City of Tulsa adopted a new charter after statehood, reincorporating under Oklahoma law. 71 F.4th at 1285. As such, "Tulsa is no longer entitled to Congress's limited grant of jurisdiction in Section 14." *Id.* Like Tulsa, Henryetta organized pre-statehood in late 1901

and fell under Section 14 of the Curtis Act.[7] Unlike Tulsa, however, Henryetta did *not* reincorporate or adopt a new charter after statehood.[8] Accordingly, Henryetta is still protected by Section 14 of the Curtis Act, which has not been repealed by Congress.

The *Hooper* panel also contended that the Oklahoma Enabling Act extended Oklahoma Territory law across the former Indian Territory, thus nullifying Section 14 of the Curtis Act's application in the eastern half of Oklahoma upon statehood. 71 F.4th at 1286-1287. The dissent in *Castro-Huerta* offered a similar argument that was rejected by the majority: "The dissent responds that the language of the 1906 statute enabling Oklahoma's statehood itself established a jurisdictional division between the State and Indian country. *See post*, at 20-22 (discussing the Oklahoma Enabling Act). That argument is mistaken." *Castro-Huerta*, 597 U.S. at 654. The Oklahoma Enabling Act extends the "laws in force in the Territory of Oklahoma" to the entire state. Oklahoma Enabling Act § 21. It is silent with respect to the "laws in force" in Indian Territory. However, the *Hooper* opinion, that the Oklahoma Enabling Act did not extend the Curtis Act into statehood because the Curtis Act was a law in force in the Indian Territory, not the Oklahoma Territory, is misplaced. Congress' decision to extend "all laws in force" in the Territory of Oklahoma into statehood does not imply, or in any way suggest, necessarily that Congress intended to eliminate or repeal "all laws in force" in the Indian Territory at statehood. While *Castro-Huerta's* analysis is not directly on point, it is instructive: only "clear statutory language" can divest a state of its territorial authority after statehood. *Castro-Huerta*, 597 U.S. at 653. No

---

[7] *See* https://catalog.archives.gov/id/6093584; https://www.okhistory.org/shpo/docs/RLS of4ECOKTownsPt3.pdf; *Colclazier v. Simpson*, 1924 OK 899, 229 P. 1054 (Okla. 1924).

[8] *See* March 13, 2015, Oklahoma State Auditor and Inspector Investigative Audit Report, p. 15 (noting that Henryetta is not a charter city). https://www.sai.ok.gov/Search%20Reports/database/ City%20of%20Henryetta%20Web%20Final.pdf

such statutory language exists to divest Oklahoma of the powers that the Indian Territory, or the political subdivisions within it, possess under the Curtis Act.

Furthermore, concluding that the Oklahoma Enabling Act implicitly repeals the Curtis Act by not extending it into Statehood would frustrate Congress' intent to extend Territorial laws into Statehood. The Oklahoma Enabling Act preserves "all laws in force . . . ." Oklahoma Enabling Act § 21. "All" refers to "the whole amount, quantity, or extent" of the particular group or thing at issue. *See* "All," MERRIAM-WEBSTER DICTIONARY (Online Edition, 2025).[9] Accordingly, Congress' decision to extend "all laws" into statehood, as opposed to "some laws," evinces Congress' desire to provide the new State of Oklahoma with a robust body of state law based on its Territorial law. This body of laws includes Section 14 of the Curtis Act, which Congress has never been expressly repealed.

If this Court does not find *Castro-Huerto* to control then it will be bound to reject Henryetta's position regarding the applicability of the Curtis Act. Nevertheless, the panel's decision is illogical on its face and contrary to the historical record, and if appealed, Henryetta intends to urge that a new panel overturn incorrect precedent. In essence, the panel's decision held that Congress extended equal protection to persons within municipal boundaries in Indian Territory only for a definite period to extinguish immediately upon statehood. Thereafter, according to the panel's opinion, Congress intended for Indians within municipal limits in Eastern Oklahoma to not be subject to any criminal jurisdiction for minor offenses. This is an absurd result.

Congress had previously abolished tribal courts which were not re-established upon statehood. Congress did not extend non-major criminal jurisdiction to the United States government in Indian Country upon statehood. Essentially, the *Hooper* holding is that Congress

---

[9] https://www.merriam-webster.com/dictionary/all

intended to create a lawless zone in which millions of people would reside where tribal members could not face any penalty for anything other than major crimes. The historical record, of course, is vastly different. From the Curtis Act until statehood and for over one hundred years thereafter the State and municipalities in Eastern Oklahoma regularly exercised criminal jurisdiction. The logical question which the panel did not answer, if Congress with its plenary authority over Indian affairs had not intended for municipalities to exercise criminal jurisdiction in the interest of public safety and equal protection, then why did Congress simply not make itself clear by explicitly stating that the Curtis Act's grant of equal protection was to be temporary until a state was formed or temporary until a municipality reorganized under Oklahoma law? The panel wrongly assumed that Congress intended a void when those living at the time of statehood did not.

## CONCLUSION

Plaintiff's Complaint and request for relief is based upon the already failed legal arguments from the dissent in *Castro-Huerta* and the short and lone dissent in *O'Brien*. "Comments in the dissenting opinion . . . 'are just that: comments in a dissenting opinion." *United States. R. Retirement Bd. v. Fritz*, 449 U.S. 166, 177, n.10 (1980). Furthermore, Plaintiff does not have standing because there is no injury in fact to the Nation. With concurrent jurisdiction, the Nation has not lost any ability to charge and prosecute violations of Creek law in the Nation's Reservation. For the foregoing reasons, the Nation has failed to state a claim upon which relief can be granted against City of Henryetta. Dismissal is proper.

Filed: August 14, 2025

HALL, ESTILL, HARDWICK, GABLE,
  GOLDEN & NELSON, P.C.

*s/ Keith A. Wilkes*
D. Kenyon Williams, Jr. OBA 9643
Keith A. Wilkes, OBA 16750
Bryan J. Nowlin, OBA 21310
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120

21

T: 918.584.0400
F: 918.594.0505
kwilliams@hallestill.com
kwilkes@hallestill.com
bnowlin@hallestill.com
**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2025, I electronically transmitted the foregoing Motion to Dismiss to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing and to the registered party participants of the ECF system.


*s/ Keith A. Wilkes*
Keith A. Wilkes