**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

MUSCOGEE (CREEK) NATION,
a federally recognized Indian tribe,

*Plaintiff*,

v.

CITY OF HENRYETTA, OKLAHOMA, and
JOHN INSABELLA, in his official capacity
as City Attorney for the City of Henryetta.

*Defendants*.

Case No. 25-CV-00227-JAR

**MUSCOGEE (CREEK) NATION'S RESPONSE IN OPPOSITION
TO CITY OF HENRYETTA'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ ii

ARGUMENT ....................................................................................................................1

I.      Legal Standard ......................................................................................................1

II.     Proposition One ....................................................................................................1

III.    Proposition Two ....................................................................................................5

IV.     Proposition Three..................................................................................................5

V.      Proposition Four..................................................................................................10

        A.      The Nation Has Alleged an Injury in Fact. ................................................10

        B.      The Nation's Injury Is Redressable by a Favorable Ruling of This Court............12

        C.      Henryetta's Suspension of the Challenged Prosecutions Does Not Moot
                This Case...........................................................................................13

        D.      *Younger* Abstention Does Not Bar the Nation's Claims Regarding Future
                Prosecutions. ......................................................................................14

VI.     Proposition Five ..................................................................................................17

        A.      *Hooper* Holds that Municipal Jurisdiction Under the Curtis Act Ended at
                Statehood............................................................................................17

        B.      *Hooper* Is Binding on This Court. ........................................................18

CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997) ..................................................................................................... 2

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ..................................................................................................... 13

*Bolin v. Oklahoma*,
Case No. 23-CIV-76-RAW, 2023 WL 3451205 (E.D. Okla. Apr. 12, 2023) ........................... 19

*Bosse v. Oklahoma*,
360 P.3d 1203 (Okla. Crim. App. 2015) ...................................................................... 8

*Bosse v. Oklahoma*,
580 U.S. 1 (2016) ................................................................................................. 2, 7, 8

*Brown ex rel. Brown v. Day*,
555 F.3d 882 (10th Cir. 2009) .................................................................................. 14

*Brown v. City of Tulsa*,
124 F.4th 1251 (10th Cir. 2025) ................................................................................. 3

*Cheyenne-Arapaho Tribes v. Oklahoma*,
618 F.2d 665 (10th Cir. 1980) .................................................................................... 2

*City of Tulsa v. O'Brien*,
Case No. S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024) .................... 7, 8, 9

*Colorado Outfitters Association v. Hickenlooper*,
823 F.3d 537 (10th Cir. 2016) .................................................................................. 10

*Conover v. Oklahoma*,
933 P.2d 904 (Okla. Crim. App. 1997) ........................................................................ 8

*Dick v. United States*,
208 U.S. 340 (1908) ................................................................................................... 9

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ................................................................................................. 15

*Dutcher v. Matheson*,
840 F.3d 1183 (10th Cir. 2016) ................................................................................. 7

*Ellis v. Morzelewski*,
Case No. 2:21-cv-639-TC, 2022 WL 3645850 (D. Utah Aug. 24, 2022) ...................... 16

*Federal Trade Commission v. Elite IT Partners, Inc.*,
  91 F.4th 1042 (10th Cir. 2024) .................................................................................. 3

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) .................................................................................................... 8

*Hagen v. Utah*,
  510 U.S. 399 (1994) .................................................................................................... 6

*Halley v. Oklahoma ex rel. Oklahoma State Department of Human Services*,
  176 F.Supp.3d 1268 (E.D. Okla. 2016) ...................................................................... 3

*Herrera v. City of Palmdale*,
  918 F.3d 1037 (9th Cir. 2019) .................................................................................. 16

*Herrera v. Wyoming*,
  587 U.S. 329 (2019) .................................................................................................... 9

*Hewitt v. Parker*,
  No. 8-CV-227, 2012 WL 380335 (N.D. Okla. Feb. 6, 2012) ..................................... 7

*Hicks v. Miranda*,
  422 U.S. 332 (1975) .................................................................................................. 16

*Hooper v. Tulsa*,
  71 F.4th 1270 (10th Cir. 2023) ................................................................. 4, 17, 18, 19

*Ind v. Colorado Department of Corrections*,
  801 F.3d 1209 (10th Cir. 2015) ................................................................................ 13

*Knellinger v. Young*,
  134 F.4th 1034 (10th Cir. 2025) ............................................................................ 1, 3

*Ledbetter v. Oklahoma*,
  933 P.2d 880 (Okla. Crim. App. 1997) ....................................................................... 8

*Lonsdale v. United States*,
  919 F.2d 1440 (10th Cir. 1990) ................................................................................ 19

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) ........................................................................................... passim

*Means v. Navajo Nation*,
  432 F.3d 924 (9th Cir. 2005) ...................................................................................... 6

*Muscogee (Creek) Nation v. Tulsa County*,
  Case No. 25-CV-75-GKF-JFJ (N.D. Okla. filed Feb. 13, 2025) .............................. 11

*North Star Mutual Insurance Co. v. Rose,*
    27 F.Supp.3d 1250 (E.D. Okla. 2014) ................................................................... 19

*Oklahoma v. Castro-Huerta,*
    597 U.S. 629 (2022) ......................................................................................... passim

*Payne v. Tennessee,*
    501 U.S. 808 (1991) ............................................................................................ 7, 8

*Pinnacle Performance & Repair, Inc. v. City of Owasso,*
    Case No. 19-CV-183-TCK-JFJ, 2020 WL 1905681 (N.D. Okla. Apr. 17, 2020) ..................... 16

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
    601 F.3d 1096 (10th Cir. 2010) ................................................................................. 13

*Russell v. United States,*
    551 F.3d 1174 (10th Cir. 2008) ......................................................................... 1, 2, 7

*Seminole Tribe of Florida v. Florida,*
    517 U.S. 44 (1996) .................................................................................................... 8

*Seneca-Cayuga Tribe of Oklahoma v. Oklahoma ex rel. Thompson,*
    874 F.2d 709 (10th Cir. 1989) .................................................................................. 14

*Thomas v. Kaven,*
    765 F.3d 1183 (10th Cir. 2014) ................................................................................... 3

*United States v. Iski,*
    Case No. 24-CV-493-CVE, 2025 WL 1088811 (E.D. Okla. Apr. 9, 2025) ................... 11, 12

*United States v. Lara,*
    541 U.S. 193 (2004) ..................................................................................... 8, 10, 11

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995) .................................................................................................. 8

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah,*
    790 F.3d 1000 (10th Cir. 2015) ................................................................ 2, 4, 11, 14

*Ward v. Race Horse,*
    163 U.S. 504 (1896) .................................................................................................. 9

*White Mountain Apache Tribe v. Bracker,*
    448 U.S. 136 (1980) ............................................................................................. 3, 4

*Winn v. Cook,*
    945 F.3d 1253 (10th Cir. 2019) ................................................................................ 14

iv

*Winnebago Tribe of Nebraska v. Stovall*,
   341 F.3d 1202 (10th Cir. 2003) .................................................................... 14

**Constitutional Provisions and Statutes**

25 U.S.C. § 1301(2) .................................................................................... 9, 10, 11

Act of Aug. 15, 1953, Pub. L. No. 83-280, 67 Stat. 588 .................................... 6

Curtis Act, ch. 517, 30 Stat. 495 (1898) ................................................... 17, 18

U.S. Const. amend. X .......................................................................................... 8

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................... passim

**Legislative Materials**

H.R. Conf. Rep. No. 102-261, 1991 WL 218024 (1991) ................................... 6

H.R. Rep. No. 102-61 (1991) ............................................................................ 6

**Other Authorities**

William C. Canby, Jr., *American Indian Law in a Nutshell* (7th ed. 2020) .................................... 6

The City of Henryetta moves to dismiss the Muscogee (Creek) Nation's complaint under Federal Rule of Civil Procedure 12(b)(6) and for lack of standing, and alternatively, for abstention in deference to Henryetta's state prosecutions. The City's arguments provide no basis for dismissal or abstention.[1]

## ARGUMENT

### I.    Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded facts in the complaint as true and views them in the light most favorable to the non-movant. *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025). "Dismissal for failure to state a claim is appropriate only if the complaint … lacks enough facts to state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted). Additionally, dismissal under Rule 12(b)(6) may be appropriate "in rare instances" based on "a dispositive issue of law." *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008) (quotation marks omitted).

### II.    Proposition One

In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the Supreme Court reaffirmed the long-settled rule that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in Indian country," *id.* at 898 (quotation marks omitted), such that "a clear expression of the intention of Congress" is required before states "may try Indians for conduct on their

---

[1] Much of Henryetta's briefing on this motion overlaps with issues Henryetta raises in Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 41). Because the Nation already addresses those same issues in its preliminary injunction briefing, Mot. of the Muscogee (Creek) Nation for a Prelim. Inj. and Opening Br. in Supp. (Dkt. 11), it will not burden the Court with duplicative briefing by replicating those arguments here. It will instead incorporate them by reference (with concise summaries of the incorporated arguments included) as appropriate. If the Court prefers the Nation to re-file this brief with the incorporated arguments included, the Nation will of course do so, and in doing so will still be in compliance with the applicable page limit.

lands," *id.* at 929 (citation omitted). Tenth Circuit precedent is equally clear that "unless Congress provides an exception to the rule … states possess 'no authority' to prosecute Indians for offenses in Indian country." *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) (quoting *Cheyenne-Arapaho Tribes v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980).

In its Proposition One argument, Henryetta acknowledges that "this is indeed the current general rule," Mot. 4, but urges the Court to disregard it and apply instead "the jurisdictional test and analysis" set forth in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), *id.* at 3.

The Nation has addressed this issue at length in its preliminary injunction briefing, *see* Dkt. 11 at 6–19, and incorporates those arguments here by reference. As the Nation has explained, Henryetta is asking this Court to hold that *Castro-Huerta*—a case involving state criminal jurisdiction over non-Indians—*implicitly* overrules longstanding Supreme Court and Tenth Circuit precedent on the issue of state jurisdiction over crimes committed by Indians in Indian country, which *Castro-Huerta* describes as "a question not before us," 597 U.S. at 639 n.2, and accordingly "expresse[s] no view on," *id.* at 650 n.6. *See* Dkt. 11 at 8.

Henryetta nowhere explains how its argument for implicit overruling can qualify as one of those "rare instances," *Russell*, 551 F.3d at 1178, in which a court may dismiss a complaint under Rule 12(b)(6) based on a dispositive proposition of law. Indeed, the Supreme Court has repeatedly admonished that lower courts may not conclude that "our more recent cases have, by implication, overruled an earlier precedent," *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *see also, e.g.*, *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them[.]" (citation omitted)). The Tenth Circuit is equally clear that "[o]ur precedents remain good law unless the Supreme Court has indisputably and pellucidly

abrogated them." *Fed. Trade Comm'n v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1051 (10th Cir. 2024) (quotation marks omitted), *cert. denied*, 145 S.Ct. 150 (2024). *See* Dkt. 11 at 9–10.

Equally problematic for Henryetta's Rule 12(b)(6) argument is the fact that *Castro-Huerta*'s analytical framework for evaluating state criminal jurisdiction over non-Indians requires courts to engage in sovereign interest balancing under *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), before condoning such jurisdiction. *See Castro-Huerta*, 597 U.S. at 649 n.5 ("Congress did not preempt the State's jurisdiction over crimes committed by non-Indians against Indians in Indian country. Therefore, we proceed to *Bracker* balancing[.]"). But the suggestion that *Bracker* balancing supports dismissal at this stage of the case is absurd. Even were *Bracker* balancing to evaluate state criminal jurisdiction over Indians not foreclosed under separation of powers principles—*see* Dkt. 11 at 13–19—the *Bracker* balancing test is, by definition, a *fact-sensitive inquiry*. *See Bracker*, 448 U.S. at 144–45. Here, there has been no discovery or evidentiary hearing, and no facts have been determined; and those that the Nation has alleged must be taken as true with all reasonable inferences drawn in the Nation's favor, *see Knellinger*, 134 F.4th at 1042. Henryetta nowhere explains how, in light of all this, the Court could conceivably balance interests on a Rule 12(b)(6) motion. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1269 (10th Cir. 2025) (describing fact-sensitive interest balancing as "usually inappropriate—if not impossible—at the motion to dismiss stage"); *Halley v. Oklahoma ex rel. Okla. State Dep't of Hum. Servs.*, 176 F.Supp.3d 1268, 1279 (E.D. Okla. 2016) (describing "a fact-intensive balancing test" as "not ordinarily suitable for the Rule 12(b)(6) stage" (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014))).

Henryetta's actual balancing argument underscores the point. It consists of nothing but pages of conclusory assertions by Henryetta's counsel, *see* Mot. 6–8, with scant mention of the

facts alleged by the Nation in its Complaint, *see* Compl. (Dkt. 2) ¶¶ 7, 11, 15, 24–26, and no mention of the attached declaration of the Nation's Deputy Attorney General directly addressing Nation interests that would be relevant under a *Bracker* interest-balancing analysis were such an analysis permissible, *see* Decl. of Deputy Att'y Gen. Geraldine Wisner (Dkt. 12) ¶¶ 25–27. Failing even to acknowledge contrary factual allegations is no way to prevail on a 12(b)(6) motion.

Nor does Henryetta grapple with the fact that under circumstances materially indistinguishable from this case, the Tenth Circuit has found (in the more appropriate procedural context of a preliminary injunction motion) that "the harm to tribal sovereignty" from state and local prosecution of an Indian for a traffic offense within a tribe's Indian country "is perhaps as serious as any to come our way in a long time" and that the interests of the state and its subdivision (based on arguments nearly identical to Henryetta's) "shrink to all but the vanishing point" because, as is the case here, "nothing in the requested temporary injunction" would prevent the defendants from undertaking a full range of law enforcement duties with respect to Indians and non-Indians, while "referring suspected offenses by Indians to tribal law enforcement," *Ute Indian Tribe*, 790 F.3d at 1005, 1007 (quotation marks omitted).

Finally, Henryetta closes its Proposition One arguments by urging this Court to "consider the Statement of Justice Kavanaugh—the majority opinion author of *Castro-Huerta*"—on the City of Tulsa's application for a stay in *Hooper v. Tulsa*, 71 F.4th 1270 (10th Cir. 2023). Mot. 8. But that statement simply notes that the Tenth Circuit did not reach the *Castro-Huerta* argument raised by Oklahoma as amicus curiae in *Hooper* and that Tulsa could raise it on remand. *See id*. at 9. Henryetta offers no insight as to what lesson this Court should take from that statement for purposes of deciding whether the Nation has stated a claim under Rule 12(b)(6). And even had

Henryetta attempted to do so, the statement was joined only by Justice Alito, meaning that seven members of the Court, including a majority of the Justices who signed onto *Castro-Huerta*, declined to subscribe to it.

## III.    Proposition Two

In Proposition Two, Henryetta refers to the principle that states lack "criminal jurisdiction over Indians" in Indian country absent the assent of Congress as "the *losing* argument in *Castro-Huerta*[.]" *Id.* at 10. Henryetta does not explain how that can be so when the question presented in *Castro-Huerta* was solely concerned with the state's criminal jurisdiction over non-Indians, and the Court's opinion "express[es] no view on state jurisdiction over [Indian defendants]," 597 U.S. at 650 n.6. In the passage cited by Henryetta, the Court simply rejected the dissent's congressional assent principle to the extent it swept in "even jurisdiction to prosecute crimes committed by non-Indians," *id.* at 653. This is thin gruel for a Rule 12(b)(6) motion in a case concerning Indian defendants.

## IV.    Proposition Three

Henryetta next asserts that under *Castro-Huerta*, it may prosecute non-member Indians for conduct arising within the Creek Reservation. But federal law draws no distinction between member and non-member Indians for purposes of state criminal jurisdiction, so this Proposition fails for the same reasons as Henryetta's Proposition One. *McGirt*, after all, involved a non-member Indian defendant. *See* 591 U.S. at 898 (stating that defendant "is an enrolled member of the Seminole Nation of Oklahoma and his crimes took place on the Creek Reservation"). Yet the Court readily affirmed the applicability of the rule that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country'" absent "a clear expression of the intention of Congress," *id.* at 898, 929 (citation omitted), and concluded that "Oklahoma

5

cannot come close to satisfying this standard," *id*. at 929. These statements of governing law would have had no conceivable relevance if the non-member Indian defendant was, as Henryetta contends, not subject to them.[2]

Similarly, in *Hagen v. Utah*, 510 U.S. 399 (1994), the Court addressed a challenge to Utah's jurisdiction to prosecute a "member of the Little Shell Band of Chippewa Indians of Montana," Petitioner's Brief, *Hagen* (No. 92-6281), 1993 WL 384821, at *4, on land alleged to be part of the Uintah Reservation in Utah. And contrary to Henryetta's position, the Court made clear that if the locus of the offense was Indian country, Utah lacked jurisdiction over the non-member Indian defendant—whom the Court referred to as simply "an Indian"—because Congress had not authorized the prosecution. *See* 510 U.S. at 401–02, 408 (stating that "[b]ecause Congress has not granted criminal jurisdiction to … Utah to try crimes committed by Indians in Indian country," only if the locus of the crime "is not in Indian country" did Utah "properly exercise[] criminal jurisdiction over petitioner, an Indian" (quotation marks omitted)).[3]

---

[2] The *McGirt* dissenters (each of whom joined, and one of whom authored, the *Castro-Huerta* majority opinion) did not dispute the applicability of these governing rules to the non-member Indian defendant, *see* 591 U.S. at 938–73 (Roberts, C.J., dissenting). They simply disagreed with the majority as to whether Congress had, in fact, provided the requisite statutory assent. *See id*. at 951 (discussing the "series of statutes" by which Congress allegedly conferred the disputed criminal jurisdiction on Oklahoma).

[3] *See also, e.g.*, *Means v. Navajo Nation*, 432 F.3d 924, 927, 933 (9th Cir. 2005) (rejecting claim of state criminal jurisdiction within Navajo Reservation over defendant, "who is not a member of the [Navajo] tribe, but who is an enrolled member of another Indian tribe," because "Arizona, like the majority of states, does not have jurisdiction to try Indians for offenses committed on a reservation"); William C. Canby, Jr., *American Indian Law in a Nutshell* 215 (7th ed. 2020) ("[T]ribes … have jurisdiction over crimes by nonmember Indians in Indian country and the state does not."); H.R. Rep. No. 102-61, at 3–4 (1991) (explaining that if "tribes lack criminal jurisdiction over non-member Indians," the result is a jurisdictional "void" because "the states do not have jurisdiction to try Indians for criminal offenses committed within Indian reservations except in those few instances in which Congress has conferred such authority upon them"); H.R. Conf. Rep. No. 102-261, at 5, 1991 WL 218024, at *5 (1991) (stating that unless jurisdiction is assumed under Public Law 280, "a state cannot exercise jurisdiction over crimes committed by non-tribal member Indians").

Henryetta does not explain how, in the face of such clear precedent, the Nation's claims regarding the prosecution of non-member Indians can be among the "rare instances," *Russell*, 551 F.3d at 1178, in which a court may dismiss a complaint under Rule 12(b)(6) based on a dispositive proposition of law. Indeed, Henryetta's only argument regarding non-member Indians that differs from its Proposition One claims regarding Indians generally is based on the decision of the Oklahoma Court of Criminal Appeals (OCCA) in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024). *See* Mot. 11–12. Henryetta simply recites the reasoning of *O'Brien* as though it were controlling, making no attempt to defend that reasoning. *See id*. But federal district courts of course "owe[] no deference to the OCCA's adjudication of" federal law issues, *Hewitt v. Parker*, No. 8-CV-227, 2012 WL 380335, at *4 (N.D. Okla. Feb. 6, 2012); *see also, e.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016) ("[W]e are not bound by a state court interpretation of federal law." (citation omitted)).

Nor is *O'Brien* persuasive. To begin with, it acknowledges *McGirt*'s reaffirmation of the rule that states lack criminal jurisdiction over Indians in Indian country absent congressional assent. *See* 2024 WL 5001684, at *6 n.4. It concludes, however, that the rule no longer controls because "[t]his portion of *McGirt* … was undermined by *Castro-Huerta*[.]" *Id*. In so holding, *O'Brien* flatly violates the principle, discussed above and in the Nation's preliminary injunction briefing, that lower courts may not decline to follow controlling United States Supreme Court precedent on the theory that a more recent Supreme Court decision calls that prior precedent into question by implication. *See supra* pp. 2–3; Dkt. 11 at 9–10.

Of all courts, the OCCA should have known better. In *Bosse*, the Supreme Court struck down three OCCA decisions in which the OCCA had concluded that *Payne v. Tennessee*, 501

U.S. 808 (1991), "*implicitly* overruled" prior Supreme Court precedent on a specific issue, despite the fact that *Payne* (like *Castro-Huerta*) stated that its "holding was expressly 'limited to'" a different issue. *Bosse*, 580 U.S. at 2 (citations omitted).[4] The Supreme Court admonished the OCCA that "[i]t is this Court's prerogative alone to overrule one of its precedents," *id.* at 3 (citation omitted), and that *Payne*'s express disclaimer regarding the reach of its holding "should have ended [the OCCA's] inquiry …; the [OCCA] was wrong to go further and conclude that *Payne* implicitly overruled" prior case law, *id*. So too here. The OCCA lacked authority to reject *McGirt* on the theory that *Castro-Huerta* "undermined" *McGirt* on the very issue that *Castro-Huerta* describes as a question not before it.

Moreover, *O'Brien* (like Henryetta) nowhere grapples with the fact that *Castro-Huerta* premises its recognition of state authority within Indian country explicitly on the Tenth Amendment, *see* 597 U.S. at 636 ("[A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country. See U.S. Const., Amdt. 10."); *id*. at 653 (same). As the Nation has addressed at length in its preliminary injunction briefing, Dkt. 11 at 10–13, the Supreme Court has been clear that, unlike the case with non-Indians, the Constitution grants to the federal government "plenary and exclusive" criminal authority over Indians in Indian country. *Haaland v. Brackeen*, 599 U.S. 255, 272 (2023) (citation omitted); *see also United States v. Lara*, 541 U.S. 193, 200 (2004); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 62, 72 (1996). And "the Tenth Amendment unambiguously confirms" that states retain no rights of sovereignty over matters that the Constitution "*exclusively* delegated to the United States." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995) (citation omitted).

---

[4] Abrogating *Conover v. Oklahoma*, 933 P.2d 904 (Okla. Crim. App. 1997), and *Ledbetter v. Oklahoma*, 933 P.2d 880 (Okla. Crim. App. 1997), and vacating *Bosse v. Oklahoma*, 360 P.3d 1203 (Okla. Crim. App. 2015).

The Nation likewise briefed this issue as amicus curiae in *O'Brien*. The OCCA had no response other than to quote *Herrera v. Wyoming*, 587 U.S. 329, 338 (2019), for the proposition that "Oklahoma's authority to exercise its sovereign criminal jurisdiction over all its territory, including Indian country, extends from the doctrine 'that new States are admitted to the Union on an "equal footing" with existing States.'" 2024 WL 5001684, at *6. However, in the passage referenced by the OCCA, *Herrera* simply describes the holding of *Ward v. Race Horse*, 163 U.S. 504 (1896). *Herrera* goes on to explain, in language nowhere acknowledged in *O'Brien*, that the Supreme Court has "entirely rejected the 'equal footing' reasoning applied in *Race Horse*" as a basis to override the federal protection of Indians from state authority, 587 U.S. at 339.

Moreover, the OCCA's equal footing argument is a non sequitur. All states entered the Union on an equal footing. But the limitations of the Tenth Amendment are a central component of that footing. Indeed, *Dick v. United States*, 208 U.S. 340 (1908), a case relied on by the OCCA, makes clear that "a state, upon its admission into the Union, … has full and complete jurisdiction over all persons and things within its limits, *except as it may be restrained by the provisions of the Federal Constitution*," *id*. at 353 (emphasis added)). The baseline rule that extends to all states is that (absent congressional action to the contrary) they may not prosecute Indians for crimes committed in Indian country. *O'Brien*'s invocation of the equal footing doctrine simply confirms, rather than refutes, that this rule applies equally to Oklahoma.

In sum, *O'Brien* is neither controlling nor persuasive and provides no basis to sustain Henryetta's motion to dismiss.[5]

---

[5] As to the statement highlighted by Henryetta from an *O'Brien* concurrence that criminal jurisdiction over non-member Indians does not "implicate the *self* in tribal self-government," Mot. 11 (quoting 2024 WL 5001684, at *12 (Musseman, V.P.J.)), Congress and the Supreme Court disagree. *See* 25 U.S.C. § 1301(2) ("'powers of self-government' means and includes …

V.      **Proposition Four**

Henryetta next argues that the Nation lacks standing for its claims as they pertain to

Henryetta's assertion of criminal jurisdiction over non-member Indians. Mot. 12–16. Standing

requires "(1) an injury in fact; (2) causation; and (3) redressability." *Colo. Outfitters Ass'n v.*

*Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016). Henryetta challenges the Nation's standing

under the first and third requirements. Nearly identical standing arguments have been rejected in

two recent federal court decisions, and Henryetta's arguments should fare no better here.

A.      **The Nation Has Alleged an Injury in Fact.**

The Nation has alleged an injury in fact in the form of an injury to its powers of self-

government. *See* Dkt. 2 ¶ 15 ("The City's practice of prosecuting Indians for conduct within the

Creek Reservation is causing irreparable injury to the Nation by interfering with its sovereignty

and undermining the authority of its own criminal justice system, including the authority of its

Attorney General, Lighthorse Police, and courts to address under the Nation's own laws criminal

offenses committed by Indians within its Reservation.").

Henryetta contends that "[a]n injury is particularized only if it affects a party in a

personal and individual way. And a party who is not threatened by—and, indeed, could never be

subject to—state criminal prosecution lacks standing and is not an appropriate plaintiff to

challenge any such pending prosecutions." Mot. 13 (citation omitted). According to Henryetta,

"[o]nly the individuals [subject to the challenged prosecutions] can claim specific injury." *Id.* at

14.

_____

the inherent power of Indian tribes … to exercise criminal jurisdiction over all Indians"); *Lara*,
541 U.S. at 198 (tribal powers of "self-government" affirmed in § 1301 extend "'over *all*
Indians,' including nonmembers" (quoting 25 U.S.C. § 1301(2))).

The identical argument was raised by the District Attorney defendants in parallel suits the Nation has filed in this District and in the Northern District of Oklahoma, both involving prosecutions of non-member Indians.[6] Judge Frizzell recently rejected the argument on reasoning fully applicable here:

> For the first prong—injury in fact—the Nation responds that it has sufficiently alleged injury to its powers of self-government. Interference with or infringement of tribal self-government is an injury conferring Article III standing. *See, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001); *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006) ("[A]n invasion of tribal sovereignty can constitute irreparable injury."); *and Ute Indian Tribe v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015). In *United States v. Lara*, 541 U.S. 193 (2004), the Supreme Court wrote that, in 25 U.S.C. § 1301(2), Congress recognized and affirmed in each tribe the inherent tribal power to prosecute non-member Indians for misdemeanors. *Id.* at 199. The Nation has sufficiently alleged an injury in fact.

Order at 2–3, *Muscogee (Creek) Nation v. Tulsa Cnty.*, Case No. 25-CV-75-GKF-JFJ (N.D. Okla. Aug. 12, 2025) ("Order"). And Judge Eagan has reached the same conclusion, again on terms that apply equally here. *See United States v. Iski*, Case No. 24-CV-493-CVE, 2025 WL 1088811, at *2–3 (E.D. Okla. Apr. 9, 2025) (holding that state jurisdiction over Indians in Indian country implicates tribal interests in sovereignty and self-government and that "Indian tribes, like states and other governmental entities, have standing to sue to protect sovereign interests").

These decisions have it right, and Henryetta has offered this Court no basis to reach a contrary conclusion here.

---

[6] Defendant Steve Kunzweiler's Motion To Dismiss Plaintiff's Complaint and Brief in Support at 8–9, *Muscogee (Creek) Nation v. Tulsa Cnty.*, Case No. 25-CV-75-GKF-JFJ (N.D. Okla. Apr. 7, 2025), 2025 WL 1548406 ("An injury is particularized only if it affects a party in a personal and individual way. And a party who is not threatened by—and, indeed, could never be subject to— state criminal prosecution lacks standing and is not an appropriate plaintiff to challenge any such pending prosecutions…. Only the individuals [subject to the challenged prosecutions] can claim specific injury." (citation omitted)); Defendant's Motion To Dismiss Plaintiff's Complaint and Brief in Support at 8, *United States v. Iski*, Case No. 24-CV-493-CVE (E.D. Okla. Mar. 25, 2025), 2025 WL 1278791 (same).

**B.    The Nation's Injury Is Redressable by a Favorable Ruling of This Court.**

Henryetta contends that the Nation's claimed injury is not redressable by a favorable

ruling from this Court because the Governor and Attorney General of Oklahoma have statutory

authority to bring prosecutions independent of Henryetta's authority, and the state courts are

empowered to adjudicate any such prosecutions. Mot. 14–15. In other words, Henryetta asserts

that if this Court rules against it, other Oklahoma officials may flout that decision and engage in

conduct that this Court will have held to violate federal law.

Yet again, this argument is drawn directly from identical arguments raised by District

Attorneys in the parallel cases referenced above, and yet again the courts rejected it:

> For the third prong—redressability—defendant argues that granting relief against
> the single district attorney named in this case would have no meaningful effect on
> the Nation's alleged injury. He contends that the governor, attorney general, and
> state courts would have the authority to continue the prosecutions at issue.
> However, "a plaintiff satisfies the redressability requirement when he shows that a
> favorable decision will relieve a discrete injury to himself. He need not show that
> a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S.
> 228, 243 n.15 (1982). A favorable judicial decision in this case would redress the
> Nation's injury "'to some extent,' which is all the law requires." *Consumer Data
> Indus. Ass'n v. King*, 678 F.3d 898, 904 (10th Cir. 2012) (quoting *Massachusetts v.
> EPA*, 549 U.S. 497, 526 (2007)).

Order at 3.[7]

Henryetta has given this Court no reason to arrive at a different conclusion here.

Declaratory and injunctive relief against Henryetta will redress the Nation's injury to the extent

---

[7] *See also Iski*, 2025 WL 1088811, at *3 ("[D]efendant argues that the Nations' injuries are not
redressable or traceable because state prosecutions and adjudications would continue even if the
Court enjoined defendant. The Nations' injuries are fairly traceable to defendant's challenged
conduct because these injuries arise directly from defendant's alleged prosecution of Indians for
conduct occurring in Indian country. Therefore, regardless of defendant's predictions as to future
prosecutions or adjudications, a favorable judicial decision enjoining defendant from continuing
to criminally prosecute Indians for conduct occurring in Indian country would redress the
Nations' injury at least to some extent, which is all the law requires." (quotation marks and
citation omitted)).

that it stems from the City's actions, and that is all the law requires to sustain the Nation's standing.

### C.    Henryetta's Suspension of the Challenged Prosecutions Does Not Moot This Case.

Henryetta asserts in its response to the Nation's motion for a preliminary injunction that it has suspended the challenged prosecutions during the pendency of this litigation. Dkt. 41 at 5 ¶ 3. Henryetta nowhere develops the point in that brief, but because mootness would be a ground for dismissal, and because the Court might question whether a case or controversy still exists in light of Henryetta's assertion, the Nation addresses it here.

A defendant claiming that its "voluntary cessation" of challenged conduct has mooted a case or otherwise eliminated the basis for Article III justiciability bears a "formidable burden." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 89, 91 (2013). It must show "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *id.* at 91, and that its cessation of the challenged conduct "completely and irrevocably eradicated the effects of the alleged violation," *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1214 (10th Cir. 2015). Henryetta's bare statements that it "*currently* does not prosecute" and "does not intend to prosecute any Nation Member *during the pendency of this litigation*," Dkt. 41 at 5 ¶¶ 3, 6 (emphases added), come nowhere close to carrying this burden, which is imposed "to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct," *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (citation omitted). Henryetta has nowhere assured this Court that it has ceased such prosecutions permanently. Henryetta affirmatively states, moreover, that it "intends to continue prosecutions of non-Member Indians," Dkt. 41 at 5 ¶ 5. A live case and

controversy very much still exists, then, when it comes to Henryetta's assertion of jurisdiction over both member and non-member Indians.

    **D.**    ***Younger* Abstention Does Not Bar the Nation's Claims Regarding Future Prosecutions.**

    Henryetta next argues that the *Younger* abstention doctrine bars the Nation's claims with respect to future prosecutions. The argument again lacks merit.

    To begin, *Younger* "[a]bstention is meant to be a rare exception to the court's virtually unflagging obligation to exercise jurisdiction." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205 (10th Cir. 2003) (quotation marks omitted). That rare exception turns on three mandatory requirements: (1) an "ongoing state criminal proceeding" that the federal plaintiff seeks to enjoin, (2) that is an "adequate forum" for the federal plaintiff to adjudicate the issues raised in its complaint, and (3) that involves "important state interests[.]" *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (citation omitted)). "Each of these conditions must be satisfied before *Younger* abstention is warranted." *Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989); *see also Brown ex rel. Brown v. Day*, 555 F.3d 882, 894 n.10 (10th Cir. 2009) (where one factor not met, "we need not consider" the others). Henryetta fails to address *any* of the mandatory *Younger* factors, much less to explain how they are all met in this case.

    Henryetta cannot argue that there is an ongoing prosecution. *See* Dkt. 41 at 5 ¶¶ 3–4. Nor can it argue that there is a state interest at stake sufficient to justify abstention, as the Tenth Circuit has already foreclosed that argument. *See Ute Indian Tribe*, 790 F.3d at 1008–09 ("[W]here, as here, states seek to enforce state law against Indians in Indian country the presumption and the reality are that federal law, federal policy, and federal authority are

paramount and the state's interests are insufficient to warrant *Younger* abstention." (brackets, ellipsis, and quotation marks omitted)).

Nor can Henryetta argue that any of its criminal proceedings would provide an adequate forum in which the Nation, a stranger to those proceedings, may press its claims. Indeed, Judge Frizzell rejected the same argument by the District Attorney in the parallel case referenced above:

> [I]t is clear that the Nation does not have an adequate opportunity to raise its claims in the state proceedings. Federal courts should not abstain from exercising jurisdiction "over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding … [s]o long as the stranger has its own distinct claim to pursue.…" *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230 (10th Cir. 2004) (internal citations omitted). The Nation has a distinct claim arising from its powers of self-government.

Order at 4 (brackets and ellipses in original).

The same reasoning applies here, where the Nation is likewise a stranger to Henryetta's prosecutions of Indians, raises the same distinct claim—an injury to its powers of self-government —that it raised before Judge Frizzell, and has no means by which it could defend against that injury in Henryetta's prosecutions.

Bypassing the mandatory *Younger* factors, Henryetta invokes four cases for the proposition that there "may be some circumstances" in which litigants' interests are sufficiently entwined or where a federal plaintiff has a sufficient stake in ongoing state proceedings such that *Younger* abstention "may be appropriate." Mot. 16 (citations omitted). But Henryetta simply recites the general principles stated in those cases and leaves it at that, making no effort to explain whether and how such principles apply under the circumstances present here. *See id*.

Henryetta's cases are inapposite in any event. *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), addresses the circumstance in which the legal relationships of federal co-plaintiffs are so

intertwined that if *Younger* bars the claim of one because it is a state defendant, it may derivatively bar the others. *See id.* at 928 (considering whether "all three plaintiffs should … be thrown into the same hopper for *Younger* purposes"). Here there is no federal co-plaintiff that is also a state defendant. *Herrera v. City of Palmdale*, 918 F.3d 1037, 1047 (9th Cir. 2019), and *Ellis v. Morzelewski*, Case No. 2:21-cv-639-TC, 2022 WL 3645850, at *1 (D. Utah Aug. 24, 2022), also both involved multiple federal co-plaintiffs with closely entwined legal relationships, one of whom was a defendant in ongoing state proceedings whose federal claim was barred by *Younger*, derivatively barring the others—again, circumstances not remotely present here.

And *Hicks v. Miranda*, 422 U.S. 332 (1975), involved the equally inapposite circumstance of the federal plaintiffs having been made defendants in the state proceedings "the day following" service of their complaint, *id.* at 349. *Hicks* simply holds that *Younger* applies "where state criminal proceedings are begun *against the federal plaintiffs* after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court," *id*. (emphasis added). Because the federal plaintiffs had not shown they "could not seek the return of their property in the state proceedings…, *Younger* … could not be avoided on the ground that no criminal prosecution was pending against appellees *on the date the federal complaint was filed.*" *Id*. (emphasis added); *see also Pinnacle Performance & Repair, Inc. v. City of Owasso*, Case No. 19-CV-183-TCK-JFJ, 2020 WL 1905681, at *5 (N.D. Okla. Apr. 17, 2020) ("In *Hicks*, as in this case, … state court proceedings were subsequently filed *against the federal court plaintiffs*." (emphasis added)).

In sum, Henryetta's abstention arguments fail to meet the mandatory *Younger* requirements and rely on inapposite caselaw.

VI.    **Proposition Five**

As an alternative to claiming criminal jurisdiction over Indians derived from the State of

Oklahoma, Henryetta claims such jurisdiction under Section 14 of the Curtis Act, 30 Stat. 495

(1898), a territorial statute that conferred jurisdiction over Indians and non-Indians alike to

Indian Territory municipal corporations (such as Tulsa and Henryetta) organized under the

provisions of the Act. *See* Mot. 17–21. In *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023),

the Tenth Circuit held that the Curtis Act's grant of jurisdiction to Indian Territory municipalities

terminated upon Oklahoma's admission to statehood in 1907. Henryetta asserts two bases for

ignoring the controlling force of *Hooper.* Neither has merit.

A.    ***Hooper* Holds that Municipal Jurisdiction Under the Curtis Act Ended at
      Statehood.**

Henryetta first asserts that *Hooper* does not apply to it because the Court's analysis

turned on Tulsa's adoption of a new municipal charter in 1908. On that issue, the Court stated:

> Following statehood, in 1908, Tulsa adopted a new charter reincorporating under
> Oklahoma law. This new charter "superseded" Tulsa's previous charter under the
> Oklahoma Organic Act, and Tulsa ceased to be organized and authorized [under
> the Curtis Act].… Because Tulsa is no longer authorized and organized [under the
> Curtis Act], Tulsa is no longer entitled to Congress's limited grant of jurisdiction
> in Section 14.

*Id.* at 1285 (brackets and citation omitted).

Henryetta argues that "[u]nlike Tulsa, however, Henryetta did *not* reincorporate or adopt

a new charter after statehood. Accordingly, Henryetta is still protected by Section 14 of the

Curtis Act, which has not been repealed by Congress." Mot. 19 (footnote omitted). But that

distinction provides no refuge. Just a few paragraphs later, *Hooper* makes clear that municipal

authority under the Curtis Act ended for Tulsa at statehood in 1907, independent of its adoption

of a new charter:

> *[U]pon statehood, even prior to Tulsa's adoption of a new charter under Oklahoma law, Tulsa ceased to be a municipality organized [under the Curtis Act].* The Oklahoma Enabling Act extended Oklahoma Territory laws across the former Indian Territory. This means, *upon statehood*, Tulsa became a municipality subject to the laws of the Oklahoma Territory, until the point it was reorganized under Oklahoma state law. So, by its express terms, Section 14 of the Curtis Act no longer applied to Tulsa *upon statehood*[.]

*Id.* at 1286–87 (emphases added) (citation omitted). The same holding applies of its own force to Henryetta.

**B.    *Hooper* Is Binding on This Court.**

Next, and with a remarkable disregard for the controlling force of Tenth Circuit precedent, Henryetta undertakes a futile assault on *Hooper*'s reasoning. It first contends that *Hooper*'s analysis of the Curtis Act "was rejected by the majority" in *Castro-Huerta.* Mot. 19. But *Hooper* post-dates *Castro-Huerta,* so the argument is a loser out of the gate. Moreover, Oklahoma made the same argument to the Tenth Circuit in *Hooper* that Henryetta makes here about *Castro-Huerta*'s treatment of the Curtis Act. *See* Brief of Amicus Curiae State of Oklahoma in Support of Appellee City of Tulsa and Affirmance at 10–14, *Hooper* (No. 22-5034), 2022 WL 3646974, at *10–14. The Tenth Circuit obviously was not persuaded, and for good reason: *Castro-Huerta* will be searched in vain for support for Henryetta's claim. Indeed, Henryetta concedes that "*Castro-Huerta's* analysis is not directly on point," Mot. 19.

Abandoning all restraint, Henryetta proceeds to deride *Hooper* as resting on a "misinterpretation of the law," Mot. 17, and as "misplaced," "illogical on its face and contrary to the historical record," "incorrect," "absurd," and "wrongly" decided, *id.* at 19–21. And it assures this Court that if it rules against Henryetta, on appeal "Henryetta intends to urge that a new panel overturn" *Hooper*. *Id.* at 20.

18

What any of this has to do with the question raised by Henryetta's motion—whether the Nation has stated a claim upon which relief can be granted—Henryetta does not endeavor to explain. This Court of course lacks authority to disregard *Hooper* as wrongly decided, *see N. Star Mut. Ins. Co. v. Rose*, 27 F.Supp.3d 1250, 1254 (E.D. Okla. 2014) (stating that Tenth Circuit precedent "is of course binding on this court"), much less grant a motion to dismiss on that basis. Henryetta's suggestions to the contrary are "completely lacking in legal merit and patently frivolous," *Bolin v. Oklahoma*, Case No. 23-CIV-76-RAW, 2023 WL 3451205, at *1 (E.D. Okla. Apr. 12, 2023) (quoting *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990)).

## CONCLUSION

The Nation respectfully requests that Henryetta's motion be denied.

Dated: August 28, 2025

Respectfully submitted,

*/s/ Riyaz A. Kanji*

Geraldine Wisner, OBA No. 20128
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

Philip H. Tinker, OBA No. 36498
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

19

## CERTIFICATE OF SERVICE

I certify that on August 28, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji