# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe,<br><br>        *Plaintiff,*<br><br>v.<br><br>CITY OF HENRYETTA, OKLAHOMA,<br><br>        *Defendant*. | Case No. 25-CV-00227-JAR |

**MUSCOGEE (CREEK) NATION'S RESPONSE IN OPPOSITION TO
CITY OF HENRYETTA'S MOTION TO STAY PROCEEDINGS**

The City of Henryetta moves to stay this case "pending action by the United States Supreme Court in *Marvin Stitt v. City of Tulsa*, Docket No. 25-30." Defs.' Mot. To Stay Proceedings ("Mot.") 1. The motion should be denied. A well-settled four-factor test guides this Court's discretion to stay a matter in deference to another action, and Henryetta's motion fails on all four counts.

## I.    Legal Standard

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also D.B.U. v. Trump*, No. 25-1164, 2025 WL 1233583, at *1 (10th Cir. Apr. 29, 2025) (same). That burden is stringent. Where a movant seeks to stay a case because a similar issue is pending in another court, the movant

> *must* make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. *Only in rare circumstances* will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphases added); *see also Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (partially quoting same); *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (quoting same and stating that "[t]he underlying principle clearly is that the right to proceed in court should not be denied except under the most extreme circumstances." (quotation marks and brackets omitted)).

The Tenth Circuit has set forth the factors for courts to consider in determining whether a movant has established that the extreme circumstances warranting a stay exist: (1) whether the movant's position is "likely to prevail in the related proceeding"; (2) whether "defendants will suffer irreparable harm" absent the stay; (3) "harm to the other parties" if the stay issues; and (4)

"the public interests at stake." *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). "The first two factors … are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). If a movant fails to meet them, the Court need not address the others. *See id*. at 435 ("*Once an applicant satisfies the first two factors*, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." (emphasis added)).

## II.    Henryetta Has Not Shown the Requisite Likelihood of Success on the Merits.

Under the first factor, the Court considers whether the movant "has made a *strong showing* that he is likely to succeed on the merits[.]" *Id*. at 426 (emphasis added) (citation omitted) (describing same as the 'traditional' standard for a stay"). To make that showing here, Henryetta would have to demonstrate (1) that the Supreme Court is likely to grant review in the *Stitt* case; <u>and</u> (2) that after granting review, it would adopt Henryetta's position that the State and its political subdivisions have criminal jurisdiction over both non-member and member Indians. Henryetta has come nowhere close to making these showings.

<u>First</u>, the Supreme Court has not granted certiorari review in *Stitt*. In a parallel proceeding in the Northern District of Oklahoma, where the Nation has sued the District Attorney for Tulsa County, the defendant similarly moved for a stay pending resolution of the petition for certiorari in *Stitt*, and Judge Frizzell denied the motion. Because "the Petition is not yet ripe and the Supreme Court has not granted a writ of certiorari," he explained, "defendants have not demonstrated that this is one of the 'extreme circumstances' where the right to proceed in court should be denied." Order (Dkt. 74) at 1–2, *Muscogee (Creek) Nation v. Kunzweiler*, Case No. 25-CV-75-GKF-JFJ (N.D. Okla. July 24, 2025) (quoting *Chilcott*, 713 F.2d at 1484).

While Henryetta asserts (as did the Tulsa County District Attorney before Judge Frizzell) that "it is likely the Supreme Court will issue the writ of certiorari," Mot. 4, every reason exists

to think that it will not. On June 25, 2025, the Nation and the City of Tulsa (the Respondent in the *Stitt* case) executed a Joint Settlement Agreement to resolve separate litigation that the Nation had brought against the City regarding its exercise of criminal jurisdiction over Indians within the Nation's Reservation. *See* Joint Settlement Agreement Between Plaintiff Muscogee (Creek) Nation and Defendants City of Tulsa Et Al. (Dkt. 149-1), *Muscogee (Creek) Nation v. City of Tulsa*, Case No. 23-cv-00490-JDR-CDL (N.D. Okla. June 25, 2025). Pursuant to that settlement, Tulsa has "agree[d] that it will not exercise Criminal Jurisdiction over Indian Defendants on the Nation's Reservation." *Id.* ¶ 8. The City has further agreed that going forward, it "will dismiss with prejudice all pending prosecutions in the City's court system … against all known Indian defendants for conduct occurring on the Nation's Reservation," *id.* ¶ 10, "will not initiate prosecutions … against known Indian defendants for conduct occurring on the Nation's Reservation," *id.* ¶ 11, and "will work in good faith with the Nation to transfer tickets and charges dismissed under … this Agreement to the Nation. The City shall refer all future charges and tickets against known Indian defendants for conduct occurring within the Nation's Reservation to the Nation and/or … to both the United States and to the Nation," *id.* ¶ 12.

While the joint motion of the City and the Nation for the district court to approve the settlement and to dismiss the litigation between them is still pending, the agreement calls for the City to commence the above-described actions on its effective date, *see id*. ¶ 16, and the City has been good to its word. It no longer prosecutes Indians for crimes committed on the Nation's Reservation. Rather, it refers such prosecutions to the Nation (including an additional ticket issued to Marvin Stitt, the Petitioner in the *Stitt* case). The City and the Nation have opted for shared governance and cooperation over conflict and, pursuant to another provision of the Agreement, they are in the process of establishing a joint working group "to evaluate and

recommend additional practices, policies, and cooperative agreements to achieve their joint public safety and law enforcement priorities," *id.* ¶ 15.

Accordingly, the City of Tulsa, while the putative Respondent in the *Stitt* matter, no longer has a dog in that fight. It would be highly unusual for the Supreme Court to issue a writ of certiorari in a case in which the Respondent lacks a stake in the outcome and has agreed to permanently cease the challenged conduct. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 711 (2011) ("[T]hat the allegedly wrongful behavior could not reasonably be expected to recur … stymie[s] our ability to consider this petition." (citation omitted)). This is particularly so given that several other cases exist, including this one, in which the issue of State criminal jurisdiction over Indians for conduct committed within Indian country may well be teed up for the Court in the normal, adversarial fashion. Henryetta fails to address any of this, and its simple conjecture that the issues presented here may be resolved by the Supreme Court is far from sufficient to justify a stay.

<u>Second</u>, even in the unlikely event that the Supreme Court grants the petition for certiorari in *Stitt* under such circumstances, Henryetta acknowledges that "the *Stitt v. City of Tulsa* case presents a precise question of a municipality's jurisdiction over a non-member Indian as the petitioner is a member of the Cherokee Nation and the speeding infraction undisputedly took place within the Creek Nation's reservation." Mot. 4. The City offers only convoluted speculation as to how that posture renders it likely that the Supreme Court, should it grant review, would go beyond the facts at issue in *Stitt* and address municipal criminal jurisdiction over member Indians, *see id.* at 4–5 (which is of course a central issue in this case). *See, e.g.*, *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 615 (2007) ("Relying on the

4

provision of the Constitution that limits our role to resolving the 'Cases' and 'Controversies' before us, we decide only the case at hand.").

Finally, even setting aside the low odds of the Supreme Court granting review in *Stitt*, Henryetta has not made a "strong showing," *Nken*, 556 U.S. at 434, that the Court would decide the issue presented (criminal jurisdiction over non-member Indians) in a manner favorable to Henryetta's position here. The Nation has addressed Henryetta's arguments and authorities in other filings with this Court, *see* Mot. of the Muscogee (Creek) Nation for Prelim. Inj. and Opening Br. in Supp. (Dkt. 11); Muscogee (Creek) Nation's Resp. in Opp'n to City of Henryetta's Mot. To Dismiss (Dkt. 47); and Muscogee (Creek) Nation's Reply in Supp. of Mot. for Prelim. Inj. (Dkt. 49), and will not burden the Court with duplicative briefing. As those filings demonstrate, Henryetta has failed even to address several of the Nation's principal arguments and the array of controlling Tenth Circuit and Supreme Court precedents on which they rest, *see, e.g.*, Dkt. 49 at 3–4 & n.2. And while Henryetta relies extensively on *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), it nowhere grapples with that decision's grounding in the Tenth Amendment, *see* Dkt. 11 at 10–13; Dkt. 49 at 4. And not once does it acknowledge the *Castro-Huerta* Court's repeated disavowal of any intent to reach the question of state criminal jurisdiction over Indians, much less attempt to square its position with those disclaimers, *see* Dkt. 11 at 8–9; Dkt. 49 at 3. Henryetta's alternative argument asks this Court to disregard the Tenth Circuit's controlling decision in *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023), as wrongly decided and to uphold Henryetta's jurisdiction under the Curtis Act, *see* Dkt. 47 at 18–19. To simply state the argument is to defeat it. Henryetta cannot make the requisite "strong showing" on the merits where it ignores controlling precedent, ignores key premises of the cases

on which it does rely, and asks this Court to disregard a controlling Tenth Circuit decision that is fatal to its position.[1]

### III.    Henryetta Has Not Shown It Will Suffer Irreparable Harm Absent a Stay.

Henryetta's irreparable harm arguments lack all force. It contends only that it "will suffer irreparable harm by being forced to expend resources engaging in proceedings in a federal district court that will more than likely be answered by the United States Supreme Court" and that "[t]here is a risk here of an outcome that will ultimately be inconsistent with the Supreme Court." Mot. 5 (citing *Dalton v. Walgreen Co.*, No. 4:13 CV 603 RWS, 2013 WL 2367837, at *2 (E.D. Mo. May 29, 2013)).

The first contention is a dead letter. As the Supreme Court has recently explained, courts applying the four-factor stay test "often do not consider litigation-related burdens … from the continued District Court proceedings … to constitute irreparable harm." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023). Indeed, it is well-settled that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury" for purposes of that test, *id*. (quoting *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)); *see also, e.g.*, *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 43 F.3d 1483, at *2 (10th Cir. 1994) (same); *In re Broiler Chicken Grower Antitrust Litig. (No II)*, MDL No. 6:20-md-2977-RJS-CMR, 2024 WL 3223665, at *3 (E.D. Okla. June 7, 2024) (same).

The second contention—that denial of a stay risks subjecting Henryetta to a decision by this Court that is "inconsistent with the Supreme Court," Mot. 5—simply does not follow. The

---

[1] Henryetta urges this Court to take a "somewhat relaxed" view of its likelihood of success on the merits. Mot. 4 (quoting *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003)). But that standard applies only "where the moving party has established that the three 'harm' factors tip decidedly in its favor," *id.* As addressed in the following sections, Henryetta has not come close to doing so.

case cited by Henryetta involved a movant being potentially subject to conflicting orders in parallel state and federal court proceedings. *See Dalton*, 2013 WL 2367837, at *2. Henryetta fails to explain how, if the Supreme Court renders a decision on any issue involved in this case, Henryetta could possibly find itself also subject to an inconsistent order of this Court on that issue. If and when the Supreme Court speaks, its word will control.

*    *    *

Because "[t]he first two factors … are the most critical," *Nken*, 556 U.S. at 434, Henryetta's failure to meet them obviates the need for this Court to address the others, *see id*. at 435. Should the Court nevertheless consider them, they likewise demonstrate that this case hardly presents the "extreme circumstances," *Chilcott*, 713 F.2d at 1484 (citation omitted), under which a stay should issue.

## IV.    Henryetta Has Failed To Show an Absence of Harm Should a Stay Be Granted.

Henryetta must establish the absence of "even a fair possibility" of harm to the Nation should a stay issue, *Landis*, 299 U.S. at 255. In attempting to carry this burden, Henryetta contends:

> The Nation loses little through a delay of a few short weeks or months until the Supreme Court announces its decision on the petition for review. Indeed, the Nation has no evidence of any pending prosecutions of the Nation's own members at this time, and similarly has no evidence of any pending prosecutions of non-member Indians at this time.

Mot. 5. This argument falls far short of the mark.

<u>First</u>, Henryetta's assertions do not even amount to a denial that prosecutions of Indians are presently taking place. Notably, Henryetta is unable to confirm that it is not currently prosecuting Indians for conduct within the Creek Reservation. *See* Defs.' Resp. in Opp'n to Pls.'

7

Mot. for Prelim. Inj. (Dkt. 41) at 5 ¶ 4 (stating merely that "Henryetta is unaware" of any such prosecutions).

Second, Henryetta's filings contain nothing remotely resembling a commitment that Henryetta will not resume the prosecution of Indians during any stay that issues. As for Creek citizens, the City merely claims to have suspended their prosecution "without prejudice" subject to the "discretion" of its City Attorney, Decl. of John Insabella (Dkt. 41-2) ¶ 2, who claims jurisdiction over all Indians within the Creek Reservation under "*McGirt* and *Castro-Huerta*," *id.* ¶ 4. And as for non-member Indians, Henryetta openly promises that it "will continue to prosecute non-member Indians if the situation were to arise," *id.* ¶ 5, because Henryetta is of the view that "of course, the prosecution of non-Member Indians does not infringe upon or implicate the *self* in tribal self-government," Mot. To Dismiss and Br. in Supp. by Def. City of Henryetta (Dkt. 39) at 11 (quotation marks omitted).[2]

Henryetta's vague and noncommittal posture on the prosecution of Nation citizens within the Creek Reservation, and its open assurance that it will continue to prosecute non-member Indians, hardly eliminate "even a fair possibility," *Landis*, 299 U.S. at 255, that the Nation will be harmed in the event of a stay. *See, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1243, 1250 (10th Cir. 2001) (finding irreparable harm to tribal sovereignty in case where "all citations issued to the tribe or its members ha[d] been resolved" but there was a prospect of "continued citation by the state").

---

[2] *But see United States v. Lara*, 541 U.S. 193, 198 (2004) (stating that tribes' "powers of self-government" encompass "criminal jurisdiction over *all* Indians, including nonmembers" (citation omitted)).

V.    **Henryetta Has Not Shown that the Public Interest Favors a Stay.**

Henryetta's sole argument on this final element of the stay test is that the "public interest favors granting a stay because it would avoid potentially duplicative litigation. The judicial resources of this District are already strained by the presence of additional criminal cases and the lack of Article III judges." Mot. 5–6.

The Nation in no way underestimates the significance of this Court's docket. But if the conservation of judicial resources were alone sufficient to meet the public interest factor of the test, then that factor would weigh in favor of every requested stay (rendering the factor meaningless) because a stay, by definition, suspends the expenditure of judicial resources. But courts do not view judicial economy so one-sidedly, because a non-movant's access to the judicial system represents a strong, countervailing public interest. *See, e.g.*, *United States v. Carey*, 664 F. App'x 716, 719 (10th Cir. 2016) (vacating district court order staying case "until after the Supreme Court has decided" a related case and stating that "[c]onsiderations of judicial economy should rarely if ever lead to such broad curtailment of the access to the courts" (quoting *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 469 (10th Cir. 1985))); *C.R. Bard, Inc. v. Med. Components, Inc.*, Case No. 2:12-cv-00032-JNP-DAO, 2024 WL 5092274, at *2 (D. Utah Dec. 12, 2024) (quoting same and denying motion to stay on judicial economy grounds); *Milburn v. Life Invs. Ins. Co. of Am.*, Case Number CIV-04-0459-C, 2005 WL 8167678, at *2 (W.D. Okla. Jan. 26, 2005) (same).

Moreover, Henryetta's judicial economy arguments are grounded in speculation. As discussed above, there exists only a remote possibility that the Indian country jurisdiction issues in this case will be taken up and fully resolved by the Supreme Court in the *Stitt* matter; and courts in this Circuit deciding stay motions routinely decline to credit judicial efficiency

arguments based on such speculation. *See, e.g.*, *Johnson v. Textron Aviation, Inc.*, Case No. 23-2378-DDC-RES, 2023 WL 7696870, at *6 (D. Kan. Nov. 15, 2023) (rejecting judicial economy argument and stating that "the Court will not speculate as to the outcome of the jurisdictional issues in Connecticut" and "a wholesale stay here may only postpone the court's work, thereby frustrating the court's strong interest in moving its docket" (quotation marks omitted)); *Freedom Transp., Inc. v. Navistar Int'l Corp.*, Case No. 2:18-CV-02602-JAR-KGG, 2020 WL 108670, at *5 (D. Kan. Jan. 9, 2020) ("[A]ny savings in costs and judicial resources are speculative."); *Berkshire v. Herbert*, Case No. 2:17-cv-1322 DN, 2018 WL 3599207, at *2 (D. Utah June 7, 2018) (rejecting "waste of judicial resources arguments as made by Plaintiff" based on events "that may never occur" and "on conjecture, speculation"), *report and recommendation adopted*, 2018 WL 3598518 (D. Utah July 26, 2018); *Atl. Richfield Co. v. United States*, 181 F. Supp. 3d 898, 919 (D.N.M. 2016) (rejecting judicial efficiency arguments as "purely speculative"). Judicial economy and delay are not synonymous, and Henryetta's motion is nothing more than a prescription for the latter.

## CONCLUSION

The Nation respectfully requests that Henryetta's Motion be denied.

Dated: September 3, 2025

Respectfully submitted,

*/s/ Riyaz A. Kanji*

Geraldine Wisner, OBA No. 20128
Deputy Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Philip H. Tinker, OBA No. 36498
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

11

### CERTIFICATE OF SERVICE

I certify that on September 3, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji