# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

**FILED**
NOV 18 2025
BONNIE HACKLER
Clerk, U.S. District Court
By _____
Deputy Clerk

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 25-CV-227-JAR |
| CITY OF HENRYETTA, OKLAHOMA | ) ) ) | |
| Defendant. | ) | |

### OPINION AND ORDER
### DENYING THE MOTION TO DISMISS

This Court cannot rewrite Oklahoma's history, nor is it concerned with its politics. Its duty is narrower: to apply the Constitution, federal case law, and the treaties as they were written. The boundary between state authority and tribal sovereignty in Indian country was marked long before this dispute arose, and nothing in this record suggests Congress has moved it. The question, then, is narrow: may a municipality step beyond that boundary without congressional authorization? Congress draws that line, and the courts must honor it.

Principles define the law; facts decide cases. The facts here reveal a familiar tension: jurisdiction asserted, sovereignty challenged, and long-settled limits tested again. Having surveyed the legal boundary, the Court now turns to where the parties have stood upon it.

### I.    SUMMARY OF CASE

The Muscogee (Creek) Nation ("Nation") brings this action seeking declaratory

and injunctive relief, alleging that the City of Henryetta ("The City") is unlawfully prosecuting Indians, including non-members, for ordinance violations within the boundaries of the Creek Reservation. (Dkt. No. 2)

The City moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that it possesses concurrent jurisdiction under <u>Oklahoma v. Castro-Huerta</u>, 597 U.S. 629 (2022), that the Curtis Act grants residual municipal authority, that the Nation lacks standing, and that abstention is warranted. (Dkt. No. 39)

The Nation responds that <u>Castro-Huerta</u> is inapposite, that the Curtis Act was extinguished at statehood, and that the City's continued assertion of jurisdiction violates both federal law and tribal sovereignty. (Dkt. No. 47) The Court addresses each argument in turn.

### A.   Jurisdiction by Consent

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings and enter final judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. No. 38).

### B.   Threshold Jurisdictional Review

Although Defendant frames its motion under Rule 12(b)(6), portions of its argument, particularly those concerning standing, mootness, and abstention, implicate the Court's subject-matter jurisdiction. Federal courts must assure themselves of jurisdiction before addressing the merits. <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

2

559-560 (1992). The Nation alleges a concrete injury to its sovereign authority, traceable to the City's actions and redressable by declaratory and injunctive relief. Accordingly, the Court finds Article III jurisdiction proper and proceeds to the Rule 12(b)(6) analysis.

## II. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must state a claim that is plausible on its face. The Court accepts all well-pleaded facts as true and views them in the light most favorable to the non-movant. *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025); *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008). Dismissal based solely on law is proper only in "rare instances." *Id.*

## III. ANALYSIS

### Proposition One — The Jurisdictional Rule Predates McGirt: Ute Controls, McGirt Corrects, and Castro-Huerta Does Not Alter It and Did Not Overrule McGirt

The governing rule in this Circuit did not originate with *McGirt v. Oklahoma*, 591 U.S. 894 (2020). It was set firmly in place five years earlier in *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015), where the Tenth Circuit held that state and local officials inflict a sovereign injury when they prosecute Indians for conduct occurring in Indian country; an injury the court described as "perhaps as serious as any to come our way in a long time." *Id.* at 1005. That principle, that States lack criminal jurisdiction over Indians in Indian country absent congressional authorization, was not new in 2020, and it was not born in

3

Oklahoma. It was already binding federal law. What *McGirt* changed was not the rule of jurisdiction but the map to which that rule applies. Once the Supreme Court confirmed that the Muscogee (Creek) Reservation remained intact, the existing Tenth Circuit framework simply applied to a corrected understanding of Indian country in Oklahoma. The City's refusal to cite *Ute* does not diminish its weight; it underscores its force. A party cannot avoid controlling law by ignoring it.

Against that settled backdrop, the Court's decision in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), did not disturb the existing framework. *Castro-Huerta* arose from a narrow question: whether Oklahoma could prosecute a non-Indian who committed a crime against an Indian within the Cherokee Nation. *Id.* at 632-633. The Court held the State could exercise concurrent jurisdiction in that limited circumstance, reasoning that "Indian country is part of the State" unless Congress provides otherwise. *Id.* at 637-638.

Yet the opinion was deliberate in its boundaries. The majority made clear that the case involved "a crime committed in what is now recognized as Indian country (Tulsa) by a non-Indian (Castro-Huerta) against an Indian (his stepdaughter)." *Id.* at 634. And the Court expressly disclaimed any ruling on the opposite scenario, stating: "Furthermore, this case does not involve the converse situation of a State's prosecution of crimes committed by an Indian against a non-Indian in Indian country. We express no view on state jurisdiction over a criminal case of that kind." *Id.* at 650 n. 6. Nothing in the opinion alters *McGirt*, which the Court acknowledged and which

4

continues to hold that state courts lack jurisdiction to prosecute Indians for conduct occurring in Indian country absent congressional authorization. What *Castro-Huerta* decided for non-Indian offenders is the only question it answered; what it explicitly reserved as to Indian defendants is the question The City asks this Court to resolve. A court that "expresses no view" leaves no room for creative expansion. What the Supreme Court declined to decide is just as binding as what it did. Silence is not sanction. This Court applies holdings, not hypotheticals.

The City nevertheless leans on a single sentence from the opinion stating that **"the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country."** (emphasis in original) (Dkt. No. 39 at 5); *Id.* at 638. Viewed in isolation, the sentence reads broadly. Viewed in context, its limits are unmistakable. Jurisdiction over territory is not jurisdiction over persons, and the majority guarded that distinction with deliberate care. The territorial observation merely restates an uncontested premise: a State's borders do not evaporate where Indian country begins. The power to prosecute Indians within those borders has never flowed from geography. It flows from Congress alone. On that question, *McGirt* remains untouched. The Supreme Court recognized it, cited it, and did not alter a single syllable of its command that States lack criminal jurisdiction over Indians absent congressional authorization.

The line the City invokes does not enlarge the holding of *Castro-Huerta*. It

reinforces its limits. The decision spoke to non-Indian defendants and no one else. It acknowledged *McGirt* and left it standing. The Supreme Court of the United States expressly refused to answer the question now placed before this Court. That refusal is binding. The City asks this Court to supply what the Supreme Court withheld. The law does not permit it. Territory defines a map. Jurisdiction defines the law. Until Congress chooses otherwise, the prosecution of Indian defendants for conduct in Indian country belongs where it has always belonged: to the sovereigns Congress has authorized.

The City's theory of "implicit overruling" contradicts settled law: only the Supreme Court may overrule its own precedents. *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016). *Castro-Huerta* left *McGirt* untouched; the line remains where Congress drew it.

Nor can *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), rescue the City. That case's balancing test is fact-intensive and "usually inappropriate, if not impossible, at the motion-to-dismiss stage." *Brown v. City of Tulsa*, 124 F.4th 1251, 1269 (10th Cir. 2025). *Bracker* is a regulatory preemption balancing test; criminal jurisdiction over Indians is exclusive by constitutional design, not balance. Sovereignty is not a pleading defect; it is a constitutional boundary.

Finally, *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684, offers no refuge. State courts do not speak the final word on questions of federal law, and this Court owes no deference, neither doctrinal nor diplomatic, to an opinion that

contradicts controlling precedent. The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, resolves that hierarchy in unmistakable terms: the Constitution, federal statutes, and treaties "shall be the supreme Law of the Land," binding "the Judges in every State, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." That clause forbids state courts from narrowing rights or expanding jurisdiction where Congress and the Supreme Court have already spoken. *O'Brien's* suggestion that *Castro-Huerta* "undermined" *McGirt* misstates the law and misunderstands the constitutional structure itself. Federal law governs within Indian country. State interpretations that dilute that rule stand in conflict with binding federal precedent. This Court's duty is not to harmonize competing interpretations, but to apply controlling law. *McGirt* remains the governing law, and within this District, as within the Nation, it is the law of the land.

### Proposition Two — Congressional Assent Remains the Rule

The City's claim that *Castro-Huerta* erased the requirement of congressional assent does not withstand the text of the opinion or the limits of its holding. *Castro-Huerta* addressed only non-Indian defendants and expressly declined to reach state jurisdiction over Indian defendants. 597 U.S. at 650 n.6. That question remains governed by *McGirt* and *Ute*, which reaffirm that states "generally have no jurisdiction to try Indians for conduct committed in Indian country" absent a "clear expression of the intention of Congress." *McGirt*, 591 U.S. at 898, 929; *Ute*, 790 F.3d at 1004. *Castro-Huerta* did not disturb those holdings; its express reservation

7

preserves them. Congress alone defines the reach of state authority in Indian country, and here Congress has said nothing. Under the Supremacy Clause, that silence is a boundary the States may not cross. For Indian defendants, it remains a jurisdictional limit, not an interpretive option.

### Proposition Three — Non-Member Indians Are Still "Indians"

Labels do not move boundaries. <u>McGirt</u> itself involved a Seminole citizen prosecuted for conduct on Creek land, a non-member Indian, and the Court drew no membership line. 'Indian' means Indian. Only Congress can unilaterally alter reservation boundaries. <u>Hagen v. Utah</u>, 510 U.S. 399, 404 (1994). It has not done so in this case. The City's turn to the equal-footing doctrine fares no better. That rationale was "entirely rejected" as a basis to displace tribal or federal protections in <u>Herrera v. Wyoming</u>, 587 U.S. 329, 339 (2019). Sovereignty over Indian affairs remains "plenary and exclusive" to Congress. <u>Haaland v. Brackeen</u>, 599 U.S. 255, 272-273 (2023). A jurisdictional boundary drawn by the Constitution cannot be redrawn by labels, doctrines, or preferences. It holds because Congress, not the City, controls where state power ends.

### Proposition Four — Standing, Mootness, and Abstention

As mentioned previously, the City did not cite <u>Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah</u>, 790 F.3d 1000 (10th Cir. 2015), a decision that answers this case before it begins. There, as here, state officials sought to exercise power where federal law forbids it. The City's silence on controlling authority is

telling. The precedent stands, and this Court will not pretend it does not exist. In *Ute*, state and county officials prosecuted tribal members for crimes inside reservation boundaries. The Tenth Circuit reversed a dismissal on abstention grounds and reaffirmed that such assertions of state power inflict a sovereign injury "perhaps as serious as any to come our way in a long time." *Id.* at 1005. The court held that when state or local governments attempt to enforce their laws against Indians in Indian Country, "the presumption and the reality are that federal law, federal policy, and federal authority are paramount." *Id.* at 1008-09. Because the injury is to sovereignty itself, a tribe need not await piecemeal state prosecutions; it may seek prospective federal relief. *Id.* That is this case. The City's assertion of municipal power over Indians within the Creek Reservation is the same jurisdictional trespass *Ute* condemned.

Interference with tribal self-government constitutes a cognizable injury. *Prairie Band Potawatomi Nation v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001); *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006).

A favorable judgment would redress the Nation's injury by preventing the City from exercising criminal authority that federal law does not permit, thereby removing the ongoing interference with the Nation's powers of self-government. Interference with tribal self-government is a recognized injury supporting Article III standing. *Prairie Band of Potawatomi Indians*, at 1242 (10th Cir. 2001); *Wyandotte Nation*, at 1255 (10th Cir. 2006) ("an invasion of tribal sovereignty can constitute irreparable

injury"); <u>Ute</u> at 1005. And as the Supreme Court explained in <u>United States v. Lara</u>, 541 U.S. 193, 199 (2004), Congress has recognized and affirmed the Nation's inherent power to exercise criminal authority over non-member Indians, further underscoring the sovereign interests at stake. The Nation has therefore adequately alleged an injury that is both concrete and redressable.

The City's temporary "pause" in prosecutions does not moot this case. Voluntary cessation moots only when it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91 (2013). The City's declaration that it "intends to continue" such prosecutions forecloses mootness.

Abstention under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), is unwarranted. No ongoing state criminal proceeding involves the Nation; no adequate state forum exists to vindicate tribal sovereignty interests; and the requested relief would not enjoin any pending prosecution. Where state or local authority collides with tribal self-government in Indian Country, "federal law, federal policy, and federal authority are paramount." <u>Ute</u>, 790 F.3d at 1008-09.

### Proposition Five — The Curtis Act Is Not Applicable

The Curtis Act argument is not merely weak; it is foreclosed. In <u>Hooper v. City of Tulsa</u>, 71 F.4th 1270 (10th Cir. 2023), the Tenth Circuit held that municipal authority derived from § 14 of the Curtis Act did not survive Oklahoma statehood. The court was direct: "upon statehood, Tulsa ceased to be a municipality organized

under the Curtis Act," because the Oklahoma Enabling Act and the new state legal order displaced the territorial framework; § 14 "no longer applied." *Id.* Tulsa's fallback, that some remnant of pre-statehood incorporation could keep § 14 alive, was rejected outright. Congress did not preserve that federal charter after statehood, and municipal authority thereafter flows only from Oklahoma law. *Id.*

The City's incorporation argument fares no better. The City asserts that its pre-statehood incorporation allows it to retain Curtis Act authority today. But *Hooper* already answered that claim: the legal question is not whether a town incorporated under territorial law, but whether Congress carried § 14 forward into Oklahoma statehood. It did not. Once Congress admitted Oklahoma and declined to preserve § 14, no municipality in the new State; Tulsa, Henryetta, or any other could claim Curtis Act jurisdiction by inertia or nostalgia. Henryetta's incorporation history cannot revive a federal statute Congress allowed to lapse.

Under *Ute*, when state or local officials attempt to enforce their laws against Indians in Indian country, "the presumption and the reality are that federal law, federal policy, and federal authority are paramount." 790 F.3d at 1008–09. *McGirt* confirms where that boundary lies: when the defendant is an Indian and the locus is Indian country, criminal jurisdiction belongs to the United States or the Tribe; not the municipality. *Hooper* closes the Curtis Act door; *Ute* sets the constitutional limit; *McGirt* marks the ground on which that limit applies. The City cannot reopen any part of that closed structure, no matter the label it prefers or the era it invokes.

11

## IV. CONCLUSION

The City of Henryetta asks this Court to do precisely what the State of Utah once asked in *Ute*, to look past a century of federal law and declare that local convenience outweighs tribal sovereignty. The Tenth Circuit has already answered that question, and this Court is bound to follow it. *Ute* held that when state or local governments seek to enforce their laws against Indians in Indian Country, "the presumption and the reality are that federal law, federal policy, and federal authority are paramount." 790 F.3d at 1008-09. That was the law then, and it remains the law now. Where no precedent supports the extension of state or municipal jurisdiction over Indians in Indian Country, this Court will not invent one. The judiciary interprets law; it does not create what Congress omits.

What the City seeks is not clarification. It seeks permission to disregard what has already been decided. But the judiciary does not legislate by impatience, and this Court will not pretend settled precedent is an open question. *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015); *McGirt v. Oklahoma*, 591 U.S. 894 (2020); and *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023), control this case in every meaningful respect. Each confronted the same premise The City now repackages, whether state or municipal authority can extend into Indian Country without congressional consent, and each answered identically: it cannot. The judiciary speaks in precedent, and that precedent could not be clearer.

Public safety is not imperiled by fidelity to the law. When governments invoke

fear to defend power, the Court's duty is to separate the echo from the evidence. Here, only the echo remains. Budgetary consequences do not expand jurisdiction. The Constitution does not bend to convenience. Sovereignty is the measure of a Nation's dignity and a Republic's word. A covenant still standing between law and land, written first in promise and now reaffirmed in precedent. The Creek Reservation endures, and so too does the Nation's right to govern its own. In the end, the Court stands where the Constitution still stands: with the law as written, the precedent as binding, and the promise as kept.

**IT IS THEREFORE ORDERED** the City of Henryetta's Motion to Dismiss for Failure to State a Claim (Dkt. No. 39) is **DENIED**.

Dated this 18th day of November 2025.

Jason A. Robertson
United States Magistrate Judge