# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MUSCOGEE (CREEK) NATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 25-cv-00227-JAR |
| | ) |
| **CITY OF HENRYETTA, OKLAHOMA,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

---

**DEFENDANT CITY OF HENRYETTA'S
PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.

D. Kenyon Williams, Jr. OBA 9643
Keith A. Wilkes, OBA 16750
Bryan J. Nowlin, OBA 21310
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilliams@hallestill.com
kwilkes@hallestill.com
bnowlin@hallestill.com

**ATTORNEYS FOR THE CITY OF HENRYETTA**

# CITY OF HENRYETTA'S PROPOSED
# FINDINGS OF FACTS AND CONCLUSIONS OF LAW ON
# PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant City of Henryetta ("Henryetta" or "City") hereby provides its proposed Findings of Facts and Conclusions of Law for the Court's use in ruling upon the Motion for Preliminary Injunction [Doc. 11] of Plaintiff, the Muscogee (Creek) Nation ("MCN"). After having heard the presentation of evidence during a hearing on October 7, 2025, and applying the law to the established facts, Henryetta requests the Court to enter an Order denying the MCN's request for extraordinary relief.

## INTRODUCTION

Plaintiff's motion to preliminarily enjoin Henryetta should be denied. "Four factors must be shown by the movant to obtain a preliminary injunction: (1) the movant 'is substantially likely to succeed on the merits; (2) [the movant] will suffer irreparable injury if the injunction is denied; (3) [the movant's] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)). "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *N. M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To prevail, the MCN must establish each factor. *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022). Applied here, the MCN is not entitled to relief.

## PROPOSED FINDINGS OF FACTS
## SUPPORTIVE OF DENIAL OF AN INJUNCTION

1.     Henryetta was established in 1901 in Indian Territory. *See* Declaration of Donna White. [Doc. 41, Ex. 1, Declaration of Donna White]. Henryetta is not a charter city and has never had a city charter. *Id*. The City of Henryetta's form of government is the statutory council-manager form of government found in Okla. Stat. tit. 11, § 10-102, et al.

1

2.	The Nation presented no evidence during the hearing on the preliminary injunction that Henryetta currently prosecutes MCN members for criminal offenses within its municipal courts.

3.	The Nation presented no evidence during the hearing on the preliminary injunction that Henryetta is currently prosecuting non-MCN Indians ("non-Member Indian") for criminal offenses within its municipal courts.

4.	John Insabella is the city prosecutor and city attorney for Henryetta. [October 7, 2025, Transcript ("Tr.") at p. 206]. Mr. Insabella testified that he is unaware of any pending prosecutions of a member of any federally-recognized Indian tribe. [Tr. at p. 210].

5.	Mr. Insabella served as city prosecutor when the United States Supreme Court announced its decision in *McGirt*. Henryetta did not change its stance as to any prosecutions before its municipal courts because Henryetta cannot and does not prosecute major crimes. [Tr. at p. 209].

6.	As city prosecutor, Mr. Insabella is aware of only <u>two</u> MCN members who have been prosecuted in municipal court since *McGirt* was issued more than five years ago. [Tr. at p. 210]. Mr. Insabella dismissed both municipal prosecutions without prejudice. [*Id.*]. Each of these prosecutions are the <u>only</u> instances in which a tribal member asserted that the Henryetta municipal court lacked jurisdiction over them due their status as MCN members. [*Id.* at p. 211].

7.	The Henryetta municipal court and Oklahoma District Court systems provide mechanisms for any tribal member, or any defendant, to challenge the jurisdiction of that court and to appeal any adverse determination. [Tr. at p. 211].

8.	Henryetta complies with the ruling of the Oklahoma Court of Criminal Appeals in *City of Tulsa v. O'Brien*, 2024 OK CR 31, and intends to continue prosecutions of non-Member Indians for violations of Henryetta's city ordinances. [Tr. at p. 212].

9.	The City is not and will not knowingly any Nation Member during the pendency of this litigation for offenses within its corporate boundary absent further clarification of its jurisdiction from

a court of competent jurisdiction to clarify its concurrent jurisdiction as set forth in *Castro-Huerta*. [Doc. 41, Ex. 2, Declaration of John Insabella].

10.    The Nation did not present evidence of any pending prosecutions in Henryetta's municipal court system, but only presented evidence of a handful of previous citations—some pre-dating *McGirt*—within its briefing in support of a preliminary injunction.

11.    Henryetta issued citations to Heather Rodgers on or about November 6, 2016, prior to *McGirt*, which the Nation referenced in support of its motion for preliminary injunction. [Doc. 41, Ex. 3, Incident/Offense Report 2025-0050; Ex. 4, Warrant W110619-16; Ex. 5, Citation Records 075750]. The Nation did not present any evidence that Ms. Rodgers ever asserted her MCN membership or otherwise challenged jurisdiction before the Henryetta Municipal Court.

12.    Henryetta lacks any record of Ms. Rodgers asserting her MCN membership before the Municipal Court. Ms. Rodgers did not appear in Court. Henryetta lacks any record of Ms. Rodgers' excuse for failure to appear following her February 10, 2025, arrest. Henryetta regularly reschedules court appearances for persons with written proof of medical issues or placement in treatment facilities. [Doc. 41, Ex. 2, Insabella Declaration].

13.    The Henryetta Police Department arrested Bandy Hill at the Hillcrest Medical Center in Henryetta on May 4, 2024, for public intoxication. Henryetta does not possess a record of Ms. Hill ever identifying herself as an MCN Member to the Henryetta Municipal Court. Ms. Hill failed to appear at her first two court dates. On June 26, 2024, Ms. Hill finally faxed a letter from a sober living facility to justify her absence from Court because of her presence in a treatment program. Despite the guilty finding, the Municipal Court has taken no further action since 2024. There is no warrant outstanding for Brandy Hill. [Doc. 41, Ex. 7, Citation 075124; Ex. 2, Insabella Declaration].

14.    Darius Tiger was cited for driving without a license and without insurance on February 10, 2025. Mr. Tiger was ordered to appear on February 10, 2025. Mr. Tiger began making payments

on the citations on March 10, 2025. [Doc. 41, Ex. 8, Citations 075630 and 075631]. Mr. Tiger did not challenge jurisdiction or appeal his municipal conviction to the state district court.

15. Daniel Bear was arrested on May 11, 2025, by the Henryetta Police Department. Mr. Bear did ask for the Creek Nation police. Mr. Bear was arrested for a City of Henryetta Warrant W100722-04, and received citations for driving offenses. [Doc. 41, Ex. 9, Incident/Offense Report 2025-0226]. Mr. Bear appeared in Court with an attorney to contest Henryetta's jurisdiction based upon his status as an MCN Member on or about June 30, 2025. The City Attorney exercised his prosecutorial discretion and dismissed the case without prejudice. [Doc. 41, Ex. 10, Citation 076056].

16. The City of Henryetta has a population of approximately 5,640 people as of the 2020 census and a total land area of 6.6 miles. The Census estimates that approximately 1,105 persons living in Henryetta are American Indian or Alaska Natives.[1] The Census does not have data available on how many are Nation Members, non-Member Indians, or persons who identify as American Indian or Alaska Native but are not members of any federally-recognized Indian tribe.

17. The Nation did not present any evidence suggesting a policy within the City of Henryetta to assert jurisdiction over MCN Members for minor offenses within its municipal court. The Nation did not present evidence suggesting that Henryetta prevents defendants from contesting the jurisdiction of the municipal court, and the Nation presented no evidence that the municipal appellate process to Okmulgee County District Court is or was unavailable to any defendant.

18. Steve Norman is the police chief for the City of Henryetta. [Tr. at p. 214]. Henryetta employs twelve sworn police officers. [*Id*. at p. 217].

---

[1] https://data.census.gov/profile/Henryetta_city,_Oklahoma?g=160XX00US4033750#race-and-ethnicity (last visited August 13, 2025).

19. If the City of Henryetta Police Department encounters a person who may have committed a minor offense and that person identifies as an MCN Member, the City calls the Nation's Lighthorse Police. [*Id*. at 221].

20. In one instance the Lighthorse Police took over one hour to arrive on scene in Henryetta with an Lighthorse officer traveling from Muskogee to Henryetta. [*Id.* at p. 223].

21. During his testimony, Secretary Harjo was unable to state whether or how a traffic citation by Henryetta to a non-Member Indian interferes with the MCN's ability to offer any services to non-Member Indians. [Tr. at p. 46].

22. Lighthorse Police Chief Richard Phillips testified that the Lighthorse Police is regularly within Henryetta as they technically drive within the city limits on Highway 75, and often congregate at the QuikTrip on the highway while driving to or from work in Okmulgee. However, there is no regularly scheduled traffic patrol or other patrol of the City of Henryetta by the Lighthorse. [Tr. at p. 99-100].

23. Chief Phillips could not answer when asked for an acceptable time to respond for the Lighthorse to a call from Henryetta. Chief Phillips admitted that the Lighthorse could be spread thin and that it is troubling from a law enforcement perspective if a Member is detained on a suspected DUI for a significant amount of time while upon Lighthorse police to respond. [Tr. at p. 102].

24. The Lighthorse Police, with 59 officers, issues approximately 2.3 citations per day over its eleven county jurisdiction. [Tr. at p. 105]. In contrast, the City of Henryetta, with a much smaller geographic area and smaller police force, issues approximately 5 citations per day. [Tr. at p. 221].

25. The Nation's Deputy Attorney General responsible for prosecutions within the MCN does not know how many traffic citations, if any, the Lighthorse Police have issued within the City of Henryetta. [Tr. at p. 166].

26. Deputy Attorney General Wisner testified that there is no prohibition on the MCN from patrolling and enforcing its traffic code within the City of Henryetta. [Tr. at p. 169]. Yet, when asked

5

why the Nation does not currently patrol Henryetta for traffic enforcement, General Wisner replied that the Lighthorse Chief and some officers "occasionally" pass through Henryetta in route to somewhere else. [*Id.*].

27. The Nation is not mandated to enter into cross-deputization agreements and may decline to enter into agreements. [Tr. at p. 170]. Similarly, the City of Henryetta is not mandated to enter into cross-deputization agreements and may choose not to enter into such agreements. [*Id.*]. And while cross-deputization arrangements including prosecution arrangements may be a good thing, the Court cannot base irreparable harm on the parties' inability or unwillingness to voluntarily enter into cooperative prosecution or cross-deputization agreements.

28. The Lighthorse Police does not regularly patrol Henryetta for traffic violations and has not presented any evidence that it will do so if an injunction is granted against Henryetta.

29. Deputy Attorney General Wisner testified that a cross deputization agreement is in the public interest but that in the absence of a cross deputization agreement it is not in the public interest for Henryetta to continue to issue traffic citations to non-Member Indians when the Lighthorse does not observe the infraction. [Tr. at p. 177]. General Wisner's reasoning is that the Nation is ready to provide resources and involvement with the City's enforcement process but will not make those resources available to non-members unless the Nation is notified, and those individuals, while capable of notifying the Nation themselves, are unlikely to do so. [*Id.* at 177-178].

## PROPOSED CONCLUSIONS OF LAW
## LAW SUPPORTING A DENIAL OF PRELIMINARY INJUNCTION

### A.     General Authority on Preliminary Injunctions

1. "Four factors must be shown by the movant to obtain a preliminary injunction: (1) the movant 'is substantially likely to succeed on the merits; (2) [the movant] will suffer irreparable injury if the injunction is denied; (3) [the movant's] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" *Fish*

*v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)).

2. "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *N. M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

3. To prevail, the MCN must establish each factor. *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022).

4. Three categories of preliminary injunctions are disfavored and require a heightened standard of proof: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Colorado v. EPA*, 989 F.3d 874, 883-84 (10th Cir. 2021).

5. To obtain a disfavored injunction, the movant must make a "strong showing" that the likelihood-of-success-on-the-merits and the balance-of-harms factors tilt in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quoting *Fish*, 840 F.3d at 724).

6. The traditional purpose for preliminary injunctions is to "preserve the status quo until a trial on the merits may be had." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

7. In the Tenth Circuit, the status quo is defined "by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1100 (emphasis in original).

B. **SUBSTANTIAL LIKELINESS OF SUCCESS ON THE MERITS**

8. Pursuant to the Major Crimes Act ("MCA"), "[a]*ny Indian* who commits" certain enumerated major crimes "within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a) (emphasis added).

9. Congress never properly disestablished the MCN reservation in eastern Oklahoma. As a result, the MCN reservation remains "Indian country." *McGirt v. Oklahoma*, 591 U. S. 894 (2020).

10. The holding in *McGirt* does not support a presumptive prohibition against state criminal jurisdiction over nonmember Indians because this case does not involve the MCA. *Id.*

11. Federal law defines "Indian country" to include, among other things, "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. §1151.

12. Different jurisdictional rules might apply for the prosecution of criminal offenses in Indian country. *See id.* at §§1151-1153.

13. "[T]the Constitution allows a State to exercise jurisdiction in Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022).

14. Although the holding in *Castro-Huerta* does not address the issue raised in this case, the opinion sets forth the preemption analysis by which issues of a State's criminal jurisdiction in Indian country must be evaluated and decided. *Muscogee (Creek) Nation v. Kunzweiller*, Case 4:25-cv-00075-GKF-JFJ (N.D. Okla. Nov. 7, 2025).

15. "Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country. *Id.* (citing U. S. CONST. amend. X).

8

16. "State sovereignty does not end at a reservation's border." *Nevada v. Hicks*, 533 U. S. 353, 361 (2001).

17. "States have jurisdiction to prosecute crimes committed in Indian country unless preempted." *Castro-Huerta*, 597 U.S. at 636.

18. The General Crimes Act provides: "Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." 18 U. S. C. §1152.

19. The use of "sole and exclusive jurisdiction" in the General Crimes Act is "'only used in the description of the laws which are extended' to Indian country, not 'to the jurisdiction extended over the Indian country.'" *Castro-Huerta*, 597 U.S. at 640 (quoting *In re Wilson*, 140 U. S. 575, 578 (1891)).

20. "[T]he General Crimes Act does not say that Indian country is equivalent to a federal enclave for jurisdictional purposes. Nor does the Act say that federal jurisdiction is exclusive in Indian country, or that state jurisdiction is preempted in Indian country." *Id*. at 639.

21. The text of the General Crimes Act "simply 'extend[s]' federal law to Indian country, leaving untouched the background principle of state jurisdiction over crimes committed within the State, including in Indian country." *Id*.

22. "[E]ven assuming that the text of the Major Crimes Act provides for exclusive federal jurisdiction over major crimes committed by Indians in Indian country, that conclusion does not translate to the differently worded General Crimes Act." *Castro-Huerta*, 597 U.S. at 642 (citations omitted).

23. Thus, "[u]nder the General Crimes Act . . . both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id.* at 639 (footnote omitted).

24. "[E]ven when federal law does not preempt state jurisdiction under ordinary preemption analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id.* at 649 (citing *White Mountain Apache Tribe v. Bracker*, 448 U. S. 136, 142-143 (1980); *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 333-35 (1983)).

25. The "State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Id.* at 651 (citing *New York ex rel. Cutler v. Dibble*, 62 U.S. 366, 21 How. 366, 370, 16 L. Ed. 149 (1859)).

26. "Under the Constitution, States have jurisdiction to prosecute crimes within their territory except when preempted (in a manner consistent with the Constitution) by federal law or by principles of tribal self-government." *Castro-Huerta*, 597 U.S. at 652-653.

27. United States Supreme Court precedent <u>rejects</u> the proposition that Congress must expressly authorize the exercise of state jurisdiction. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 214-215 (1987) (holding that "[o]ur cases ... have not established an inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent.").

28. "[U]nder the Constitution and [the United States Supreme] Court's precedents, the default is that States may exercise criminal jurisdiction within their territory." *Castro-Huerta*, 597 U.S. at 653 (citing U.S. CONST. amend X).

29. "States do not need a permission slip from Congress to exercise their sovereign authority. In other words, the default is that States have criminal jurisdiction in Indian country unless that jurisdiction is *preempted*." *Id.* (italics in original).

30. The view that Congress must affirmatively authorize States to exercise jurisdiction in Indian country "is inconsistent with the Constitution's structure, the States' inherent sovereignty, and the [United States Supreme] Court's precedents." *Id*.

31. The Oklahoma Enabling Act did not divest the State of Oklahoma of jurisdiction over Indian country. *Id*. at 654.

32. The United States Supreme Court explicitly stated that its holding, "that Indian country within a State's territory is part of a State, not separate from a State," and that "a State has jurisdiction to prosecute crimes committed in Indian country unless state jurisdiction is preempted" is <u>not</u> dicta. *Id*. "The dissent's view is inconsistent with the Constitution's structure, the States' inherent sovereignty, and the Court's precedents." *Id*.

33. In *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 273 (2022), drafted by then Circuit Judge Gorsuch, the Tenth Circuit held that "when a case brought against a tribe or its members 'arise[es] from conduct in Indian country,' state courts lack jurisdiction 'absent clear congressional authorization.'" *Id.* at 900. *Ute* does not apply here. First, this case does not involve a case brought against a tribe or its members. Second, the United States Supreme Court's non-dicta pronouncement in *Castro-Huerta* specifically addressed and <u>rejected</u> the dissent's view—shared in *Ute*—that clear congressional authorization is required for the state to have jurisdiction in Indian country.[2] The dissent's rejected proposition was written by the drafter of the *Ute* opinion, Justice Gorsuch. *Castro-Huerta*, 597 U.S. at 653.

---

[2]"The dissent incorrectly seeks to characterize various aspects of the Court's decision as dicta. To be clear, the Court today holds that Indian country within a State's territory is part of a State, not separate from a State. Therefore, a State has jurisdiction to prosecute crimes committed in Indian country unless state jurisdiction is preempted." *Castro-Huerta*, 597 U.S. at 655. The United States Supreme Court has spoken. While the MCN and a few self-anointed Native American law scholars may disagree, the *Castro-Huerta* Court plainly set out a holding that is contrary to Justic Gorsuch's dissent and his earlier opinion in *Ute*. *Id*. Indeed, "[c]omments in the dissenting opinion suggesting anything otherwise 'are just that: comments in a dissenting opinion.'" *Id*. at 656 (quoting *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 177, n.10 (1980)).

34. The "'sovereignty that the Indian tribes retain is of a unique and *limited* character.'" *United States v. Cooley*, 593 U.S. 345, 349-50 (2021) (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)) (emphasis added).

35. Indian tribes possess "inherent sovereign authority over *their* members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, (1991) (internal citation omitted) (emphasis added). *See also Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 689 (2022) (quoting *Citizen Band Potawatomi*).

36. "Under our Federal system, the State possesses primary authority for defining and enforcing the criminal law." *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation omitted).

37. "The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) (internal quotation omitted).

38. Oklahoma's authority to exercise its sovereign criminal jurisdiction over all its territory, including Indian country, extends from the doctrine "that new States are admitted to the Union on an 'equal footing' with existing States." *Herrera v. Wyoming*, 587 U.S. 329, 338, (2019) (internal quotation omitted).

39. The relationship between the state's sovereign authority to exercise jurisdiction over all persons and things within its own territory, and Congress's constitutional authority over the Indian tribes, has been described by the Supreme Court as resting on "fundamental principles . . . of equal dignity, and neither must be enforced as to nullify or substantially impair the other." *Dick v. United States*, 208 U.S. 340, 353 (1908).

40. "In regulating commerce with Indian tribes Congress must have regard to the general authority which the state has over all persons and things within its jurisdiction. So, the authority of the state cannot be so exerted as to impair the power of Congress to regulate commerce with the Indian tribes." *Id*. at 353.

41. United States Supreme Court case law does not hold that State jurisdiction which deals in any way with Indians on the reservation is *per se* preempted by the Indian Commerce Clause, the Treaty Clause, or the trust relationship between the United States and the Tribes which informs Congress's exercise of its legislative powers. *Haaland v. Brackeen*, 599 U.S. 255, 274-275 (2023).

42. Indian reservations are no longer viewed as distinct nations occupying their own territory like in the past. "States have jurisdiction to prosecute crimes committed in Indian country unless preempted." *Castro-Huerta*, 597 U.S. at 637.

43. The doctrine of Indian sovereignty, premised on the rule that State laws generally are inapplicable on the reservation except where Congress has expressly provided that State law may apply, "has not been rigidly applied in cases where Indians have left the reservation and become assimilated into the general community." *McClanahan v. Arizona Tax Comm'n*, 411 U.S. 164, 171 (1973) (citing *Oklahoma Tax Comm'n v. United States*, 319 U.S. 598, 63 S. Ct. 1284, 87 L. Ed. 1612 (1943)).

44. That Congress has the power to displace the Indian country criminal jurisdiction of State courts does not mean that it has done so. *Cf.*, *Brackeen*, 599 U.S. at 277 ("when Congress validly legislates pursuant to its Article I powers, we have not hesitated to find conflicting state family law preempted, [n]otwithstanding the limited application of federal law in the field of domestic relations generally.") (internal quotation omitted).

45. "[T]he text of the General Crimes Act . . . does not make federal jurisdiction exclusive or preempt state jurisdiction." *Castro-Huerta*, 597 U.S. at 644. "Public Law 280 contains no language that preempts States' civil or criminal jurisdiction." *Castro-Huerta*, 597 U.S. at 648.

46. *Bracker* balancing requires a balancing of the federal, state and tribal interests. *Bracker*, 448 U.S. at 145.

47. Federal jurisdiction over misdemeanor traffic violations would be concurrent to the city's jurisdiction and thus not affected. *See* 18 U.S.C. §§ 13.

48. The State of Oklahoma (and its municipalities) has a strong sovereign interest in ensuring public safety on the roads and highways of its territory and in ensuring criminal justice for all citizens—Indian and non-Indian. *City of Tulsa v. O'Brien*, 2024 OK CR 31 ¶ 31.

49. The State's—and, as such, Henryetta's—jurisdiction is concurrent with the MCN and would not displace nor diminish the MCN's prosecutorial authority to try Indians for violations of tribal law. Rather, State and municipal prosecution would only bolster the MCN's strong interest in public safety for its citizens. This is analogous to the rationale in *Castro-Huerta* for why concurrent State jurisdiction did not harm the federal interest in Indian country. *Id* at ¶ 32 (citing *Castro-Huerta*, 597 U.S. at 650-651).

    **C.**    **IRREPARABLE HARM**

1. The second factor that the MCN must establish to obtain a preliminary injunction is irreparable injury if the injunction is denied. *Free the Nipple*, 916 F.3d at 805 (citing *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012)).

2. "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

3. "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (emphasis in original).

### D.    BALANCE OF THE EQUITIES AND PUBLIC INTEREST

1. The final two preliminary injunction factors—whether the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction and whether the preliminary injunction would not be adverse to the public interest—merge when the government is the party opposing the preliminary injunction. *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136, 1157 (W.D. Okla. 2024) (citing *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020)).

2. Any alleged injury to the MCN's sovereignty resulting from the Henryetta's exercise of concurrent criminal jurisdiction over nonmember Indians for violations of municipal ordinances does not outweigh the injury to the citizens of Henryetta—both Indian and non-Indian—or the adverse effect to the public interest by enjoining Henryetta from enforcing its municipal ordinances against nonmember Indians. *See, e.g.*, *Muscogee (Creek) Nation v. Kunzweiller*, Case 4:25-cv-00075-GKF-JFJ (N.D. Okla. Nov. 7, 2025) (denying the MCN's motion for a preliminary injunction to enjoin the District Attorney of Tulsa County from prosecuting non-Member Indians for the alleged violation of non-major general crimes).

### CONCLUSION

The law and facts do not support the need for or the propriety of granting the MCN's Motion for Preliminary Judgment.

Filed: December 22, 2025                                Respectfully submitted,

                                                       **HALL, ESTILL, HARDWICK, GABLE,**
                                                         **GOLDEN & NELSON, P.C.**

                                                         *s/ Keith A. Wilkes*
                                                         D. Kenyon Williams, Jr. OBA 9643
                                                         Keith A. Wilkes, OBA 16750
                                                         Bryan J. Nowlin, OBA 21310

521 East Second Street, Suite 1200<br>
Tulsa, Oklahoma 74120<br>
T: 918.584.0400<br>
F: 918.594.0505<br>
kwilliams@hallestill.com<br>
kwilkes@hallestill.com<br>
bnowlin@hallestill.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    I hereby certify that on December 22, 2025, I electronically transmitted the foregoing Motion to Stay to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing and to the registered party participants of the ECF system.

<u>s/ Keith A. Wilkes</u><br>
Keith A. Wilkes