## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION,<br>a federally recognized Indian tribe,<br><br>　　　　　　　*Plaintiff*,<br><br>v.<br><br>CITY OF HENRYETTA, OKLAHOMA,<br><br>　　　　　　　*Defendant*. | Case No. 25-CV-00227-JAR |

## MUSCOGEE (CREEK) NATION'S RESPONSE IN OPPOSITION TO CITY OF HENRYETTA'S MOTION TO STAY PROCEEDINGS

The City of Henryetta ("Henryetta") has filed a motion to stay this case, "pending the outcome of Plaintiff Muscogee (Creek) Nation's appeal to the United States Court of Appeals for the Tenth Circuit in *Muscogee (Creek) Nation v. Kunzweiler, et al.*, Cir. Case No 26-5013[.]" Def.'s Mot. Stay Proc. (Dkt. 81) ("Mot.") at 1. This is Henryetta's second motion to stay these proceedings and, as with its previous motion, a well-settled four-factor test guides this Court's discretion in considering whether to grant the requested relief. Notwithstanding that the Nation thoroughly briefed those factors in response to the previous motion, Pl.'s Resp. Opp'n Def.'s Mot. Stay Proc. (Dkt. 56), Henryetta has once again failed to acknowledge them, let alone to argue that it is able to satisfy even a single one. Henryetta's motion should accordingly be denied.

## I.    Legal Standard

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also D.B.U. v. Trump*, Case No. 25-1164, 2025 WL 1233583, at *1 (10th Cir. Apr. 29, 2025) (same). A familiar four-factor test governs whether a movant has

established such need where it argues that a matter should be stayed in deference to another

proceeding: (1) whether the movant's position is "likely to prevail in the related proceeding;" (2)

whether the movant "will suffer irreparable harm" absent the stay; (3) "harm to the other parties

to the [instant] proceeding" if the stay issues; and (4) "the public interests at stake." *United

Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). "The first two

factors … are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). If a movant fails to

meet them, the Court need not address the others. *See id.* at 435 ("*Once an applicant satisfies the

first two factors*, the traditional stay inquiry calls for assessing the harm to the opposing party

and weighing the public interest." (emphasis added)).

## II.     Henryetta Has Not Shown That Its Position is Likely to Prevail in *Kunzweiler*.

Under the first factor, the Court considers whether the movant "has made a *strong

showing*," *id.* at 434 (emphasis added) (citation omitted), that its position is "likely to prevail in

the related proceeding," *United Steelworkers*, 322 F.3d at 1227. Henryetta has not even

acknowledged the need to make such a showing here. Nor could it succeed in doing so even had

it tried.

First, the Tenth Circuit's decision in *Kunzweiler* is unlikely to address a significant

portion of the dispute at the heart of this case because *Kunzweiler* is restricted to state

jurisdiction over non-major crimes by non-member Indians. *See* Mot. 1–2. The Nation's claims

here, by contrast, seek to enjoin Henryetta's exercise of all forms of criminal jurisdiction over

any Indian defendant, specifically including Nation citizens. Complaint (Dkt. 2) at Prayer for

Relief A–B. Given the lack of complete identity between the legal issues implicated by these

separate cases, Henryetta can only speculate that "a controlling appellate decision could simplify

or moot issues before the district court," Mot. at 2, which hardly constitutes a "strong showing"

that a decision in *Kunzweiler* is likely to resolve all the central issues in this action in Henryetta's favor, *see Nken*, 556 U.S. at 434.

<u>Second</u>, even on the issues common between this matter and *Kunzweiler*, Henryetta has not shown that its position is likely to prevail before the Tenth Circuit. As this Court has already recognized, "[t]he boundary between state authority and tribal sovereignty in Indian country was marked long before this dispute arose[.]" Op. and Order Den. Mot. Dismiss (Dkt. 73) at 1. It is the prerogative of Congress to establish that boundary line, and once Congress has done so, "the courts must honor it." *Id*. This Court has reviewed the relevant Circuit Court precedents and identified those that "control this case in every meaningful respect." *Id*. at 12 (citing *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000 (10th Cir. 2015); and *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023)); *see also id*. ("[T]hat precedent could not be clearer."). And those cases stand for the proposition that "[o]nly Congress" can authorize criminal jurisdiction over Indians in Indian country, *Hooper*, 71 F.4th at 1286, and therefore, unless Congress does so, "states possess 'no authority' to prosecute Indians for offenses in Indian country," *Ute Indian Tribe*, 790 F.3d at 1004 (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980)); *accord United States v. Hopson*, 150 F.4th 1290, 1299 (10th Cir. 2025) ("[T]he Supreme Court 'has long require[d] a *clear expression* of the intention of Congress before the state or federal government may try Indians for conduct on their lands.'" (quoting *McGirt v. Oklahoma*, 591 U.S. 894, 929 (2020) (quotation marks omitted))); *United States v. Iski*, Case No. 24-CV-0493-CVE, 2026 WL 123292, at *4 (E.D. Okla. Jan. 16, 2026) (Eagan, J.) (quoting *Hopson*, 150 F.4th at 1299, for same proposition).

It may be Henryetta's hope that the Tenth Circuit will now see fit to reverse those precedents. But doing so will depend on several improbable contingencies, including a majority

of the Circuit being interested in taking the criminal jurisdiction issue en banc in order to reverse longstanding Circuit precedent. *See Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1292 (10th Cir. 2024) (A Tenth Circuit panel "cannot overrule the judgment of another panel of this court." (citation omitted)). This hardly amounts to the "strong showing" of success in a related proceeding necessary to justify a stay. *Nken*, 556 U.S. at 434; *see also id*. ("It is not enough that the chance of success on the merits be better than negligible." (citation omitted)).

## III.    Henryetta Has Not Shown It Will Suffer Irreparable Harm Absent a Stay.

Henryetta has made no argument at all that it will suffer irreparable harm in the absence of a stay. Since it bears the burden on its motion, that should be dispositive for this factor.

The closest Henryetta comes to arguing harm is its suggestion that a stay would "promot[e] consistent application of law or legal principles." Mot. at 1; *see also id*. at 2 (stay would "prevent inconsistent rulings"). Yet Henryetta does not explain how a decision by the Tenth Circuit in *Kunzweiler*—however it might come out—could possibly cause it irreparable harm. Should the Tenth Circuit issue an opinion that undermines or contradicts an opinion or order of this Court, the Circuit Court's decision will control. The mere possibility that this Court's orders could potentially be reversed or modified by a controlling ruling of a higher court is an inherent possibility in every lower court proceeding and is self-evidently no basis for a district court to refrain from ruling in the first instance.

*    *    *

Because "[t]he first two factors … are the most critical," *Nken*, 556 U.S. at 434, Henryetta's failure to meet them obviates the need for this Court to address the others, *see id*. at 435. Should the Court nevertheless consider them, they likewise demonstrate that Henryetta has come nowhere close to meeting its burden to show that a stay should issue.

IV.    **Henryetta Has Failed To Show an Absence of Harm to the Nation Should a Stay Be Granted.**

Henryetta bears the burden to establish the absence of harm to the Nation should a stay issue. Again, it has not even attempted to make such a showing. And any such arguments would be contradicted by Henryetta's own actions during the pendency of this case.

In advance of the hearing on the Nation's Motion for Preliminary Injunction, Henryetta stipulated that, pending resolution of that motion, it would refrain from prosecuting Nation citizens. Stip. Mot. Reset Prelim. Inj. Hr'g (Dkt. 65) at 1–2. However, Henryetta has not agreed to enter into a cross-deputization agreement with the Nation, and accordingly its police department has continued to arrest and detain Nation citizens in the absence of any lawful authority to do so. With respect to non-member Indians, Henryetta agreed only to refrain from ticketing or prosecuting such individuals "up to and including October 7, 2025," *id*. at 2, and therefore continues to arrest and prosecute non-member Indians in violation of controlling federal law.

Henryetta's refusal to stipulate to not prosecuting non-member Indians within the Nation's Reservation, and its continued policing of both member and non-member Indians in the absence of a cross-deputization agreement, cannot be squared with any argument that the Nation will not be harmed in the event of a stay. *See* Dkt. 73 at 3 ("[S]tate and local officials inflict a sovereign injury when they prosecute Indians for conduct occurring in Indian country[.]" (citing *Ute Indian Tribe*, 790 F.3d at 1000)); *id*. at 8 ("Non-Member Indians Are Still 'Indians[.]'" (citing *McGirt*, 591 U.S. at 894)); *United States v. Little*, 119 F.4th 750, 763, 766 (10th Cir. 2024) (recognizing that "state police lacked jurisdiction" to investigate Indian suspect for offense committed within the Nation's Reservation); *see also, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1243, 1250 (10th Cir. 2001) (finding irreparable harm to tribal

sovereignty in case where "all citations issued to the tribe or its members ha[d] been resolved" but there was a prospect of "continued citation by the state").

## V.    Henryetta Has Not Shown That the Public Interest Favors a Stay.

To the extent that Henryetta's brief addresses this final element of the stay test, it argues that "[j]udicial economy is heightened in the district court when appellate courts address identical or substantially related issues," and that a stay would "promote[] judicial economy" and "avoid duplication of efforts." Mot. at 1–2.

The Nation in no way underestimates the significance of this Court's docket. But it is not at all clear how judicial economy is served by staying a case in which the merits have been fully briefed by the parties, the court has invested the time necessary to prepare for and hold a full-day evidentiary hearing, and the parties have submitted comprehensive proposed findings of fact and conclusions of law that are now under consideration by the Court. Moreover, if the conservation of judicial resources were alone sufficient to meet the public interest factor of the test, then that factor would weigh in favor of every requested stay (rendering the factor meaningless) because a stay, by definition, suspends the expenditure of judicial resources. But courts do not view judicial economy so one-sidedly, because a non-movant's access to the judicial system represents a strong, countervailing public interest. *See, e.g.*, *United States v. Carey*, 664 F. App'x 716, 719–20 (10th Cir. 2016) (vacating district court order staying case pending resolution of a related case and stating that "[c]onsiderations of judicial economy should rarely if ever lead to such broad curtailment of the access to the courts" (quoting *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 469 (10th Cir. 1985))); *C.R. Bard, Inc. v. Med. Components, Inc.*, Case No. 2:12-cv-00032-JNP-DAO, 2024 WL 5092274, at *2 (D. Utah Dec. 12, 2024) (denying motion to stay on

judicial economy grounds); *Milburn v. Life Invs. Ins. Co. of Am.*, Case No. CIV-04-0459-C, 2005 WL 8167678, at \*2 (W.D. Okla. Jan. 26, 2005) (same).

Henryetta's judicial economy arguments are also entirely speculative. As discussed above, this Court has already determined that the Tenth Circuit's "precedent could not be clearer," Dkt. 73 at 12, and therefore, for Henryetta to prevail, the Circuit will have to go en banc and reverse that precedent. Courts in this Circuit deciding stay motions routinely decline to credit judicial economy arguments based on such speculation. *See, e.g.*, *Johnson v. Textron Aviation, Inc.*, Case No. 23-2378-DDC-RES, 2023 WL 7696870, at \*6 (D. Kan. Nov. 15, 2023) ("[T]he Court will not speculate as to the outcome of the jurisdictional issues" in separate proceedings, and "a wholesale stay here may only postpone the court's work, thereby frustrating the court's strong interest in moving its docket." (quotation marks omitted)); *Freedom Transp., Inc. v. Navistar Int'l Corp.*, Case No. 2:18-CV-02602-JAR-KGG, 2020 WL 108670, at \*5 (D. Kan. Jan. 9, 2020) ("[A]ny savings in costs and judicial resources are speculative."); *Berkshire v. Herbert*, Case No. 2:17-cv-1322 DN, 2018 WL 3599207, at \*2 (D. Utah June 7, 2018) (rejecting party's "waste of judicial resources arguments" based on events "that may never occur" and "on conjecture, speculation"), *R. & R. adopted*, 2018 WL 3598518 (D. Utah July 26, 2018); *Atl. Richfield Co. v. United States*, 181 F. Supp. 3d 898, 919 (D.N.M. 2016) (rejecting "judicial efficiency" arguments as "purely speculative"). Judicial economy and delay are not synonymous, and Henryetta's motion is nothing more than a prescription for the latter.

## CONCLUSION

The Nation respectfully requests that Henryetta's motion be denied.

Dated: February 9, 2026                    Respectfully submitted,

                                           */s/ Riyaz A. Kanji*
Geraldine Wisner, OBA No. 20128            Riyaz A. Kanji
Deputy Attorney General                    David A. Giampetroni
MUSCOGEE (CREEK) NATION                     Joshua C. Handelsman
P.O. Box 580                               KANJI & KATZEN, P.L.L.C.
Okmulgee, OK 74447                         P.O. Box 3971
(918) 295-9720                             Ann Arbor, MI 48106
gwisner@mcnag.com                          (734) 769-5400
                                           rkanji@kanjikatzen.com
                                           dgiampetroni@kanjikatzen.com
O. Joseph Williams, OBA No. 19256          jhandelsman@kanjikatzen.com
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520             Philip H. Tinker, OBA No. 36498
P.O. Box 1131                              KANJI & KATZEN, P.L.L.C.
Okmulgee, OK 74447                         12 N. Cheyenne Ave., Ste. 220
(918) 752-0020                             Tulsa, OK 74103
jwilliams@williamslaw-pllc.com             (206) 344-8100
                                           ptinker@kanjikatzen.com

                  *Counsel for Muscogee (Creek) Nation*

8

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2026, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji